No. 25605

The People of the State of Colorado v. Roy Michael Williams
(516 P.2d 114)

Decided November 26, 1973.

242

John P. Moore, Attorney General, John E. Bush, Deputy, Jack E. Hanthorn, Assistant, James S. Russell, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, T. Michael Dutton, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

A four-count information charged the defendant with aggravated robbery, 1967 Perm. Supp., C.R.S. 1963, 40-5-1; entering a motor vehicle in violation of 1967 Perm. Supp., C.R.S. 1963, 40-5-10; and two counts of conspiracy in

violation of C.R.S. 1963, 40-7-35. A jury convicted the defendant of one count of conspiracy and of the crimes of robbery and unlawfully entering a motor vehicle. The defendant was sentenced to the penitentiary and on appeal claims that reversal is mandated because the police identification techniques were unconstitutionally suggestive and tainted the identification testimony. We do not agree. In nearly every case, we are confronted with this same argument, which requires a repetitious review on a case-by-case basis of the principles announced in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). *E.g., People v. Knapp,* 180 Colo. 281, 505 P.2d 7 (1973).

## The Facts

The victim was a long-haul trucker who had received over $800 for his services after completing a trip. In a Colorado Springs bar, he made his wealth known while soliciting the services of a prostitute. A prostitute came forward and volunteered to provide her services for $50. After depositing the greater part of his money in the cab of his truck, the victim went with the prostitute to a motel where the agreed price was paid. Before the parties could complete their bargain, the defendant entered the motel room with a pistol, took the victim's pants which contained the keys to the truck, and disappeared. When the victim got to his truck, he found that the money was gone. The victim reported the crime to the police and was at the police station when the defendant was brought in. At first, the victim was unable to identify the defendant, and the police released him from custody. However, before the defendant could leave the police station, the victim again came in contact with the defendant and at that time positively identified him as the robber, and an arrest was made.

■■ One-on-one line-ups are not favored and tend to be suggestive, but are not *per se* violative of due process. *Roper*

*v. Beto,* 454 F.2d 499 (5th Cir. 1972). In each case where identification is in issue, the courts look first to whether the show-up has produced reliable identification evidence or whether a likelihood exists that misidentification has occurred. Here, the defendant was granted a proper *in camera* hearing, and testimony was taken to establish the manner in which the defendant was identified by the victim. *Stovall v. Denno, supra; People v. Lovato,* 180 Colo. 446, 506 P.2d 361 (1973); *People v. Moreno,* 181 Colo. 106, 507 P.2d 857 (1973); *Sandoval v. People,* 180 Colo. 180, 503 P.2d 1020 (1972).

While Chief Justice Burger was still serving on the Court of Appeals, he had occasion to analyze the problems incident to a one-man show-up in *Bates v. United States,* 132 U.S.App.D.C. 36, 405 F.2d 1104 (D.C. Cir. 1968), and said: "There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. The rationale underlying this is in some respects not unlike that which the law relies on to make an exception to the hearsay rule, allowing spontaneous utterances a standing which they would not be given if uttered at a later point in time. An early identification is not error. Of course, proof of infirmities and subjective factors, such as hysteria of a witness, can be explored on cross-examination and in argument. Prudent police work would confine these on-the-spot identifications to situations in which possible doubts as to identification needed to be resolved promptly; absent such need the conventional line-up viewing is the appropriate procedure. "Our review of the circumstances surrounding the apprehension of Appellant and the police conduct which led to his identification satisfies us that the claim that Appellant was denied due process of law is without merit; there was no 'substantial likelihood of irreparable *misidentification.*' To the contrary, the police action in returning the suspect to the vicinity of the crime for immediate identification in circum-

stances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh."
See also *United States v. Hines,* 147 U.S.App.D.C. 249, 455 F.2d 1317 (D.C.Cir. 1972), *cert. denied,* 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972).

 Here, the chain of events which led to the defendant's identification and arrest were not the result of suggestive police investigation practices, but occurred immediately after the crime was committed, under circumstances that did not taint the identification. The circumstances surrounding the victim's loss of his pants and his subsequent identification of the defendant were all tied together without a tinge of suggestivity. As a result, the trial judge's findings at the *in camera* hearing and the subsequent admission of the in-court identification testimony were proper. *Neighbors v. People,* 171 Colo. 349, 467 P.2d 804 (1970).

Accordingly, we affirm.