The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Thomas B. HORNE, Defendant–Appellant.

No. 79SA298.

Supreme Court of Colorado, En Banc.

Nov. 3, 1980.

Dale Tooley, Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Donald Eberly, Deputy Dist. Atty., Denver, for plaintiff–appellee.

J. Gregory Walta, State Public Defender, James E. Hautzinger, Sp. Deputy State Public Defender, Denver, for defendant–appellant.

LOHR, Justice.

The defendant, Thomas B. Horne, was convicted of aggravated robbery, section 18–4–302, C.R.S.1973 (1978 Repl. Vol. 8), and first–degree criminal trespass (section 18–4–502, C.R.S.1973 (1978 Repl. Vol. 8), after a jury trial in district court. He was sentenced to imprisonment for a term of fourteen to eighteen years for the aggravated robbery and a consecutive indeterminate term not to exceed five years for the criminal trespass. Horne appealed, asserting error in certain of the trial court's rulings and challenging the sentences as illegal and excessive. The case was transferred from the court of appeals to this court pursuant to section 13–4–110(1)(a), C.R.S. 1973. We affirm the convictions, but reverse the judgment and remand the matter for correction of deficiencies in the sentencing proceedings.

On the evening of February 10, 1978, two men entered the lobby of the Radisson Hotel in Denver, threatened two hotel employees with a sawed–off shotgun, and escaped with $92. In the early morning of February 11, 1978, the police were called by a tenant of an apartment near the Radisson. The tenant, Anna Noel, was locked out of her apartment and suspected that there were intruders inside. The police broke the door and found the defendant and a companion, James Washington, asleep on a bed. A loaded sawed–off shotgun was found near the bed. Both men were arrested and charged with the aggravated robbery at the Radisson, as well as criminal trespass based upon the entry into Noel's apartment. They were tried jointly. Both were convicted of criminal trespass, but only Horne was convicted of aggravated robbery, the jury failing to arrive at a verdict on that charge against Washington.

On appeal, Horne challenges the denial of his motion to suppress an in–court identification of him by one of the hotel employees, the denial of his motion for a separate trial, and the denial of his motion for judgment of acquittal for criminal trespass. He also contends that the sentences are illegal and excessive. We conclude that the incomplete record before us does not support the severity of the sentences imposed but that the defendant's other arguments lack merit.

I.

First, we shall consider the propriety of the denial of Horne's motion to suppress his in–court identification by witness John Nichols. For the purpose of this identification discussion, it is helpful to know that Horne is white and Washington is black.

Nichols, night auditor at the Radisson on the evening of the robbery, testified that defendant Horne was the robber with the shotgun. Nichols had been unable to identify Horne in a six–person photographic lineup four days after the robbery. Thereafter, Nichols identified Horne at the preliminary hearing on March 9, 1978, at which Horne and Washington appeared and were identified as the defendants. Those were Nichols' only opportunities for identification of Horne prior to the trial. Nichols

could not identify Washington in a photographic lineup, at the preliminary hearing, or at trial.

The trial court ruled that William Fuqua, night clerk at the hotel on the evening of the robbery, would not be permitted to testify that defendant Washington was the unarmed robber. Fuqua had identified Washington in a physical lineup on February 14, 1978, and again at the preliminary hearing. The court's ruling was based upon its conclusion that the identification by Fuqua at the physical lineup violated Washington's constitutional right to counsel. Fuqua could not identify Horne at the February 14 physical lineup, at the preliminary hearing, or at trial.

Horne contends that his identification by Nichols at the preliminary hearing took place under impermissibly suggestive conditions, and as a result Nichols should not have been permitted to identify him at the trial.

An identification used as proof to link a defendant to a crime denies that defendant due process of law if the identification procedure is unnecessarily suggestive and conducive to irreparable mistaken identification. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *People v. Williams*, 183 Colo. 241, 516 P.2d 114 (1973). A claim that identification procedures were impermissibly suggestive must be evaluated in light of the totality of the surrounding circumstances. *Manson v. Brathwaite, supra; Neil v. Biggers, supra; Stovall v. Denno, supra; People v. Jones*, 191 Colo. 385, 553 P.2d 770 (1976); *People v. Knapp*, 180 Colo. 280, 505 P.2d 7 (1973).

If a witness has identified a defendant in an unconstitutionally suggestive procedure prior to trial, an identification by that witness at trial is permissible only if there is an independent source for that identification. *Huguley v. People*, 195 Colo. 259, 577 P.2d 746 (1978); *People v. Renfrow*, 193 Colo. 131, 564 P.2d 411 (1977); *Glass v. People*, 177 Colo. 267, 493 P.2d 1347 (1972); *see Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1966). The People have the burden to show by clear and convincing evidence that the in-court identification is not the product of the previous unduly suggestive procedure, but is based upon the witness' independent observations of the defendant during the crime. *Huguley v. People, supra; People v. Renfrow, supra*. An *in camera* hearing is the appropriate procedure to determine whether a witness has such an independent recollection. *Huguley v. People, supra*. Relevant factors in making this determination "include the witness's opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation with the defendant, and the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *People v. Jones*, 191 Colo. 385, 553 P.2d 770 (1976)." *Huguley v. People, supra*, 195 Colo. at 262, 577 P.2d at 747.

Here, an *in camera* hearing was conducted at a recess during jury selection. Evidence was presented reflecting that Nichols was in the presence of the robber with the shotgun for ten to fifteen minutes during the crime and observed him closely for seven to eight minutes at that time; that Nichols' description of the robber given to the police shortly after the crime was essentially consistent with the appearance of the defendant and, except for footwear, with the clothing he was wearing on the evening of the arrest; that twenty-seven days had passed between the day of the crime and the preliminary hearing; and that Nichols recognized the defendant immediately when he saw him at the preliminary hearing. There was no evidence that anyone overtly suggested the identification to him.

While Nichols' inability to identify the defendant at the photographic lineup shortly after the crime is relevant, *see United States v. Wade, supra*, it does not preclude him from making an identification upon seeing the defendant in court. Instead, it goes to the weight of his identification testimony. *See United States v. Toney*, 440 F.2d 590 (6th Cir. 1971); *Jones v. Director, Patuxent Institution*, 351 F.Supp. 913 (D.Md.1972); *State v. Myers*, 117 Ariz. 79, 570 P.2d 1252 (1977); *State v. McKinney*, 498 S.W.2d 768 (Mo.1973), *cert. denied*, 415 U.S. 926, 94 S.Ct. 1433, 39 L.Ed.2d 483 (1974); *see also People v. Jones, supra* (identification at trial permitted but issue of failure to identify in photographic lineup earlier not discussed).

The trial court found that Nichols had an independent recollection of the defendant in this case based upon his observation of the robbery on February 10, 1978. The trial court did not rule whether the preliminary hearing identification procedure was unnecessarily suggestive, but the ruling is clear that the source of Nichols' ability to identify Horne was his recollection of the events of February 10. This determination is fully supported by the evidence. The motion to suppress the in-court identification was properly denied.

The defendant also contends that it was reversible error to permit Nichols to testify at trial to his identification of Horne at the preliminary hearing. *See Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Gilbert v. California, supra*. As noted, the trial court did not specifically find the preliminary hearing identification procedure to have been unnecessarily suggestive. Whether a one-on-one identification procedure violates due process of law depends on the totality of the circumstances. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1976); *Neil v. Biggers, supra; Simmons v. United States, supra; Stovall v. Denno, supra*. Other courts have upheld similar pretrial hearing procedures in the face of such challenges. *United States v. Cole*, 449 F.2d 194 (8th Cir. 1971), *cert. denied*, 405 U.S. 931, 92 S.Ct. 991, 30 L.Ed.2d 806 (1972); *Laury v. State*, 260 A.2d 907 (Del.1969); *People v. Finch*, 47 Ill.2d 425, 266 N.E.2d 97 (1970); *Commonwealth v. Wheeler*, 3 Mass. App. 387, 331 N.E.2d 815 (1975). As the court said in *Laury v. State, supra* at 909:

"Generally speaking, a courtroom confrontation, in the presence of court and counsel and with the right of cross-examination preserved, provides adequate protection to the rights of an accused of the type sought to be covered by *United States v. Wade*, . . . . "

Horne was represented by counsel at that hearing. *Cf. Moore v. Illinois, supra* (defendant was without counsel at the pre-trial hearing).

In any event, the record does not reflect that the defendant objected to the identification procedure at the preliminary hearing, *see Moore v. Illinois, supra*, and he made no objection to Nichols' testimony concerning the preliminary hearing identification at the trial or in his motion for new trial. He may not assert this objection for the first time on appeal. Crim.P. 33(a); *Ortega v. People*, 178 Colo. 419, 498 P.2d 1121 (1972).

## II.

Horne's motion for a severance of defendants was based upon an allegedly impermissible restriction upon evidence which he could present as a result of the ruling suppressing the in-court identification of defendant Washington by witness Fuqua.

The evidence on this motion most favorable to Horne was that witnesses Fuqua and Nichols were seated together in the courtroom prior to the preliminary hearing. They had discussed the robbery on two occasions prior to that hearing. Horne and Washington then entered the courtroom handcuffed together and took seats at the defendants' table. Fuqua, Nichols, and an investigating officer talked to each other during this time and a deputy district attorney spoke to the witnesses before the hearing began. Neither Fuqua nor Nichols was present during the other's testimony.

Horne argues that the knowledge that Fuqua had already identified Washington at a physical lineup might have tended to cause Nichols to identify Horne as the robber because of his presence in the courtroom as Washington's co–defendant. Because at trial the court prevented any reference to Fuqua's identification of Washington, Horne argues that he was precluded from using Nichols' knowledge of that identification to cast doubt on the reliability of Nichols' identification of Horne. The difficulty with this argument is that there is no evidence that Fuqua ever told Nichols of the Washington lineup. Thus, there was no evidence that denial of severance prejudiced Horne. This difficulty was pointed out to Horne's counsel more than once on the numerous occasions when the motion for severance was renewed. Horne's counsel did not represent that evidence would show that Nichols had such information. No *in camera* hearing to explore this question was ever requested. Horne's counsel simply took the position that he had an absolute right to inquire into this matter by cross–examination of Fuqua and Nichols in the presence of the jury.

A motion for severance of defendants is addressed to the sound discretion of the trial court.[1] *People v. Warren*, 196 Colo. 75, 582 P.2d 663 (1978); *see People v. Johnson*, 192 Colo. 483, 560 P.2d 465 (1977); *Eder v. People*, 179 Colo. 122, 498 P.2d 945 (1972). The purpose of a severance is to promote a fair determination of the guilt or innocence of one or more defendants. *People v. Warren, supra; People v. Maestas*, 183 Colo. 378, 517 P.2d 461 (1973); *see* section 16–7–101, C.R.S.1973 (1978 Repl. Vol. 8); Crim.P. 14. Where, as here, there is no showing that denial of a motion for severance prejudiced the defendant, the trial court's ruling will not be disturbed on appeal. *People v. Maestas, supra.*

### III.

Horne next asserts that a judgment of acquittal on the criminal trespass charge should have been granted on the basis that the evidence was insufficient to support a conclusion that he was guilty beyond a reasonable doubt. We disagree.

The crux of the matter is whether the defendants had permission, or believed they had permission, to enter the apartment where they were apprehended. The evidence presents a direct conflict between the testimony of the tenant, Anna Noel, and that of the defendants. Noel testified that she did not know the defendants, although she may have seen them at a party in another apartment earlier on the evening in question. She flatly denied that she gave the defendants permission to enter her apartment. The defendants testified that they had been in the apartment building before, that a fluid social situation existed in which parties were in progress in various apartments throughout the building, and that they were present with Noel at one such party in her boyfriend's apartment. The defendants said she suggested moving the party to her own apartment. Then Noel passed out and her boyfriend took her key and moved the party to her apartment in order not to disturb her. The defendants testified that they became intoxicated and stayed at the apartment to sleep after all others had left. Noel and the defendants were the only persons who testified about these events. Although Noel admitted she had been drinking alcoholic beverages on the evening in question, there is nothing in the record to indicate that her testimony was not worthy of belief. The record reflects that the quality and quantity of the evidence in support of the verdict were substantial. The jury saw and heard the witnesses, believed Noel, and disbelieved the defendants. That was within their prerogative. *See People v. Roberts*, 197 Colo. 304, 592 P.2d 801 (1979); *People v. Medina*, 185 Colo. 183, 522 P.2d 1233 (1974). The verdict that Horne is guilty of criminal trespass is fully supported by the evidence. The motion for judgment of acquittal was properly denied. *See People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

---

1. In certain circumstances not applicable here, a co--defendant has an unqualified right to a severance of defendants. *See* section 16–7–101, C.R.S.1973 (1978 Repl. Vol. 8); Crim.P. 14.

## IV.

Horne also claims that he is entitled to resentencing under the presumptive sentencing provisions of either the 1977 version of House Bill 1589, Colo.Sess.Laws 1977, ch. 216, 18–1–105 at 867, or under the 1979 version of House Bill 1589, Colo.Sess.Laws 1979, ch. 157, 18–1–105 at 669. He contends that the provisions of the latter act which made the presumptive sentencing provisions prospective only and not to be used retroactively based on changed legal standards under Crim.P. 35(b)(1)(VI) infringes this court's rule–making power under Article VI, § 21, of the Colorado Constitution. These arguments were rejected in *People v. McKenna*, Colo., 611 P.2d 574 (1980). We have followed that decision on many occasions. *E. g., People v. Scott*, Colo., 615 P.2d 680 (1980); *People v. Cunningham*, Colo., 614 P.2d 886 (1980); *People v. Watkins*, Colo., 613 P.2d 633 (1980); *People v. Warren*, Colo., 612 P.2d 1124 (1980). We are not persuaded that those decisions should be reconsidered.

## V.

■ Finally, the defendant challenges the sentences as excessive. The defendant has the "right to one appellate review of the propriety of the sentence, having regard to the nature of the offense, the character of the offender, and the public interest, and the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based." Section 18–1–409, C.R.S.1973 (1978 Repl. Vol. 8); *e. g., People v. Cohen*, Colo., 617 P.2d 1205 (1980); *People v. Warren*, Colo., 612 P.2d 1124 (1980).

The evidence at trial showed that Horne's conduct in commission of the offense was violent and created grave risks to human life. He pointed a loaded sawed–off double–barreled shotgun at the victims. He struck victim Fuqua on the head with the butt of the weapon. Although Fuqua escaped with only a severe headache, the blow caused one shell to discharge. Only good fortune prevented injury or death from this incident. Moreover, the shotgun was found to be loaded when Horne was apprehended.

The presentence investigation report was not made part of the record. Argument at the sentencing hearing indicates that Horne was then 33 years old; is a United States Marine Corps veteran; had been arrested several times previously based on the use of drugs and alcohol; and had no prior felony record and no record of prior crimes of violence.

The trial court stated that many things had been taken into consideration in selecting the sentences. The considerations expressly referred to by the court were those relating to the defendant's serious life–threatening conduct, with emphasis on the opinion that there is no innocent purpose for which a sawed–off shotgun is adapted.

■ We do not have the benefit of the presentence investigation report, which could be expected to contain important information with respect to Horne's character and prior record and their bearing on the choice of a sentence. The presentence investigation report should always be made part of the record on appeal when review of the appropriateness of a sentence is sought. *See* 4 *ABA Standards for Criminal Justice, Appellate Review of Sentences* 20–2.3 (2d ed., 1980).

■ A sentencing judge has wide discretion in selecting the appropriate disposition. *E. g., People v. Cohen, supra; People v. Warren*, Colo., 612 P.2d 1124 (1980); *People v. Duran*, 188 Colo. 207, 533 P.2d 1116 (1975). That discretion must be exercised to achieve an appropriate balance among various sentencing objectives, including rehabilitation of the offender, deterrence, and public safety. *E. g., People v. Warren*, Colo., 612 P.2d 1124 (1980). The incomplete record before us precludes any evaluation of the rehabilitation potential of the defendant or the risk that he will engage in violent conduct in the future. The statements in argument that Horne has no prior felony convictions and no prior record of violence suggest that the trial court may have given undue weight to the nature of the offense. *See People v. Cohen, supra;*

*People v. Duran, supra.* Where, as here, a sentence of an extended duration is imposed, the record must establish a clear justification for the trial judge's action. *People v. Warren*, Colo., 612 P.2d 1124 (1980); *People v. Duran, supra.* In the absence of a presentence investigation report and specific findings of the trial court on applicability of sentencing criteria other than the nature of the crime, we cannot determine from this record whether the lengthy and consecutive sentences imposed upon the defendant were within the appropriate range of the trial court's discretion.

We therefore affirm the defendant's convictions for aggravated robbery and first–degree criminal trespass, but vacate the sentences imposed and remand this case to the trial court for resentencing or for a further statement of justification with respect to the sentences imposed and reimposition of those sentences, in the trial court's discretion, consistent with the views expressed in this opinion.

Judgment affirmed in part and reversed in part and case remanded for further proceedings.