The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Phillip SMITH, Defendant–Appellant.

No. 80SA86.

Supreme Court of Colorado,
En Banc.

Nov. 10, 1980.

As Modified on Denial of
Rehearing Jan. 5, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for plaintiff–appellee.

J. Gregory Walta, Colorado State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for defendant–appellant.

ERICKSON, Justice.

The defendant, Phillip Smith, was convicted by a jury of the offense of aggravated robbery in violation of section 18–4–302, C.R.S. 1973 (1978 Repl.Vol. 8), and sentenced to the Colorado State Reformatory. His case is now before us on appeal. The defendant asserts the following grounds for reversal: (1) the denial of his motion to suppress certain physical evidence seized as the result of a search of the car in which defendant was a passenger; (2) admission of in–court and out–of–court identifications of the defendant; (3) failure of the trial court to adequately instruct the jury on the requisite mental state for the offense of

aggravated robbery; and (4) denial of a motion for a mistrial. We affirm.

On January 2, 1977, a robbery took place at Taco John's fast–food restaurant in Longmont. Dennis Vanatta was serving customers at the counter at approximately 10:40 p. m. Among the estimated six or seven persons present at that time was a black man whom Vanatta identified as the defendant. When the defendant came in to Taco John's, he placed an order, paid his bill, and left the building with the food and the drinks which he purchased. Approximately five minutes later, he reentered the now empty restaurant and ordered an orange drink. The sale was rung up on the register, and when the cash drawer opened, the defendant said, "put the money in a bag." Vanatta testified that the defendant pointed a gun at him, and again said, "give me the money or I'll blow your head off." Vanatta complied with the demand and gave the money to the defendant. He then left the building and was not seen again by Vanatta until after the arrest occurred.

Vanatta immediately called the police and gave them a description of the suspect. He described the robber as a tall, thin, black male, approximately six feet two inches tall, in his early twenties, wearing blue pants, and a blue sweatshirt–type top with pockets and a hood which was pulled up around his head. According to the testimony of Vanatta, the lighting conditions in the restaurant were good. During both confrontations, Vanatta said that he was no more than three to ten feet away from the defendant.

Officer McCauley testified that a call on the police radio at approximately 10:45 p. m. notified him of the armed robbery and the description of the suspect. Approximately fifteen minutes later, and five blocks from Taco John's, he drove up behind and then alongside a car being slowly driven by a young black woman. Both officers knew that a very small percentage of the people in Longmont are black, and the car had out–of–county license plates. As the officer passed the car, the woman driver stared nervously and watched the police car and not the road. McCauley testified that in addition to the female driver, he also saw what appeared to be black bushy hair moving in the car. The officer also said no traffic laws were violated, the license plates were current, and the car had no visible defective parts. Based on the foregoing facts, McCauley decided to stop the car and check out the movement he had seen to determine if the suspect was hiding in the car.

McCauley made the stop and walked towards the car. When he reached the back window of the car, he observed a black male crouched on the floor in front of the front seat on the passenger side. At this point, the officer testified he observed the defendant's features and dress, and that the features and dress of the man fit the description of the suspect. He ordered the suspect out of the vehicle, searched, and arrested him. No evidence was seized as the result of this body search.

After the suspect and the driver of the car were in custody, the police searched the car at the location where it was stopped.[1] Officer McCauley testified that his search of the front passenger side of the car disclosed $266, soft drink cups, and a paper bag with Taco John labels. Officer Mauck, who also participated in the search, testified that he found a .38 caliber pistol under the driver's seat. None of the items seized were in plain view.

Another officer arrived at the scene of the arrest, and took the suspect back to Taco John's. Vanatta testified that he was told that the police were outside and had someone that they wanted him to see. He said the defendant was sitting in the front seat of the police car. He identified the defendant as the man who had robbed him some thirty to forty minutes earlier.

I.

We begin our analysis of the defendant's claim that the initial stop was an unreason-

---

1. Along with the driver and the defendant Smith, the officers also found two small chil-dren in the car; one was in the back seat, and another was on the lap of the driver.

able seizure in violation of his constitutional rights, with an examination of the rationale set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[2] In *Terry,* the court upheld the lawfulness of certain brief police stops based upon a standard of less than probable cause for the traditional arrest or custodial interrogation. *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). *Terry* dealt with those situations which fall short of a "technical arrest" or a "full–blown search" but which still are subject to the Fourth Amendment requirement of reasonableness. In determining whether the police conduct was unreasonable, the Supreme Court of the United States adopted a test whereby the need to search or seize could be weighed against the invasion which the search or seizure entailed. We followed the reasoning of *Terry* in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971):

> "There is an area of proper police procedure in which an officer having less than probable cause to arrest nevertheless may detain an individual temporarily for certain purposes and not violate the unreasonable search and seizure limitation of the Fourth Amendment." *Id.* at 508, 485 P.2d 495.

■ At the crux of the Fourth Amendment reasonableness limitation is the requirement that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual. *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

Applying the principles of *Terry* and its progeny to this case, we first consider the nature and extent of the governmental interests involved in effecting the stop. Balanced against those interests, however, we consider the invasion of the defendant's constitutional rights to be free from unreasonable search and seizures. The lawfulness of the stop must finally rest upon our determination that the officer had a reasonable suspicion, based on objective facts, that the driver of the car was involved in criminal activity.[3] In this area probabilities may not be technically measured and pose practical questions of everyday life upon which reasonable and prudent men act. Consequently, each case depends upon the facts which the police are aware of, and the question of when to stop a suspect is often close and difficult to determine.[4]

■ An armed robbery suspect was at large. The suspect was a young black male. Some fifteen minutes after the robbery, Officer McCauley noticed an out–of–county car being driven very slowly by a young black woman. This was approximately five blocks from the scene of the robbery. The woman appeared nervous. He also noticed what appeared to be black bushy hair moving in the car.[5] The governmental interest

---

2. "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated...." U.S. Const., amend. IV. "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures..." Colo.Const., Art. II, Sec. 7.

3. The *Terry* doctrine has clearly been extended to automobile stops in this state. *See People v. Mangum,* 189 Colo. 246, 539 P.2d 120 (1975); *People v. Lucero,* 182 Colo. 39, 511 P.2d 468 (1973).

4. *See People v. Baird,* 172 Colo. 112, 470 P.2d 20 (1970); *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236 (1965).
 We also note the recent decision of *United States v. Williams,* 622 F.2d 830 (5th Cir. 1980), where a majority of the Fifth Circuit, sitting *en banc,* recognized a good faith exception to the exclusionary rule. The Fifth Circuit in *Williams* refused to exclude evidence where "it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken belief that they are authorized." *Id.* at 840. The court recognized that the exclusionary rule exists to deter willful or flagrant actions by police, not reasonable, good faith ones. *See also,* Ball, *Good Faith and the Fourth Amendment: The Reasonable Exception to the Exclusionary Rule,* 69 J.Crim.L. and Criminology, 635 (1978).

5. The testimony at trial revealed that part of Officer McCauley's justification for making the stop was the fact that the driver of the car and the suspect that he was looking for were both black. He testified that there were very few blacks living in Longmont. These facts alone, would never be sufficient to justify a stop to

involved in effecting the stop was the possible detection of the armed robbery suspect.

No one of the foregoing facts rises to the level of reasonable suspicion of criminal activity, which is the standard by which we must judge such police conduct. *See People v. McPherson*, 191 Colo. 81, 550 P.2d 311 (1976); *People v. Goessl*, 186 Colo. 208, 526 P.2d 664 (1974). However, taken as a whole, we find that these facts justified the stop, and that the limited invasion of the defendant's constitutional rights was outweighed by the governmental interest in detecting criminal activity. *See People v. Waits*, 196 Colo. 35, 580 P.2d 391 (1978).

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good policework to adopt an intermediate response." *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921 [1922], 32 L.Ed.2d 612 (1971). *Accord, People v. Waits, supra; People v. Mangum*, 189 Colo. 246, 539 P.2d 120 (1975); *People v. Martineau*, 185 Colo. 194, 523 P.2d 126 (1974); *People v. Lucero*, 182 Colo. 39, 511 P.2d 468 (1973).

## II.

The defendant argues that the trial court erred when it failed to suppress the items seized as the result of the search of the car following his arrest. There is no question that the arrest of the defendant was lawful and supported by probable cause.[6] The defendant argues, however, that because both he and the driver of the car were in custody, there were no exigent circumstances which justified the subsequent search and seizure of the items without a search warrant.[7] We disagree.

We recognize that, subject to only a few specially established and well-delineated exceptions, searches conducted outside the judicial process are *per se* unreasonable under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The same standard, however, has generally not been afforded to the search of automobiles. Two reasons have been advanced for this disparity: (1) the mobility of automobiles; and (2) the diminished expectation of privacy surrounding automobiles as compared with other places such as the home.[8] Consequently, we have held that where there is probable cause to obtain a warrant to search a car, a search of the car without a warrant is justified. *See People v. Coulson*, 192 Colo. 53, 555 P.2d 516 (1976); *Atwood v. People*, 176 Colo. 183, 489 P.2d 1305 (1971); *People v. Olson*, 175 Colo. 140, 485 P.2d 891 (1971). These cases are consistent with the holding of the Supreme Court in *Colorado v. Bannister*, —— U.S. ——, 101 S.Ct. 42, 66 L.Ed.2d 142 (1980); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct.

---

investigate criminal activity. However, the totality of the facts and circumstances known by the police officers provided justification for the stop, and was not unreasonable. Hence, the defendant's constitutional rights were not violated.

**6.** Officer McCauley testified that the defendant matched the description of the armed robbery suspect. This determination was sufficient to establish probable cause to arrest. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *People v. Fratus*, 187 Colo. 52, 528 P.2d 392 (1974); section 16–3–102, C.R.S. 1973 (1978 Repl.Vol. 8).

**7.** From our reading of the record, the issue of standing was never specifically addressed in the trial court. We are not convinced that the defendant, as a passenger in the car, has standing to contest the constitutionality of the subsequent search and seizure. *See People v. Spies*, Colo., 615 P.2d 710 (1980); *United States v. Salvucci*, —— U.S. ——, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). However, because we find that this search and seizure were lawful, we do not find it necessary to consider this issue.

**8.** *See United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); 2 W. LaFave, *Search and Seizure*, Sec. 7.2.

1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In *Chambers, supra*, the court held:

> "Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Id.* 399 U.S. at 52–53, 90 S.Ct. at 1981–1982.

■ Therefore, the lawfulness of the search and seizure is based upon our determination that the officers had probable cause to search the car under the circumstances of this case. An armed robbery had occurred. A body search of the defendant incident to his arrest did not disclose the weapon used in the robbery.[9] Therefore, it was reasonable for the officers to conclude that the weapon might be found in the car. Accordingly, the search of the car was reasonable in order to determine if the weapon was there. In *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), the court upheld an on the spot search of an automobile where the officers believed that a weapon might be found. The court reasoned that the weapon could be taken from the automobile and used to injure the public if the police did not make any efforts to locate it.[10] We hold that exigent circumstances justified the subsequent search and seizure.

### III.

■ The defendant argues that the one–on–one showup conducted at Taco John's was so unduly suggestive and conducive to irreparable mistaken identification that he was denied due process of law. We disagree. One–on–one showups are not favored and tend to be suggestive, but are not *per se* violative of due process. *People v. Williams*, 183 Colo. 241, 516 P.2d 114 (1973). The police action in the instant case is not unlike that approved by this Court in *Williams, supra*:

> "[T]he police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh." *Id.* at 244–245, 516 P.2d 114.

The test by which such a procedure is measured is substantial likelihood of irreparable misidentification, and this determination is based upon the totality of the circumstances surrounding the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1976); *Stovall v. Den-*

---

**9.** We note, however, that the subsequent search of the car and seizure of the items found therein, were not a search and seizure incident to arrest where the police may search the area under the immediate control of the arrestee from which he might gain possession of a weapon or destroy evidence. The defendant and the driver were in police custody. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

**10.** The defendant argues that *People v. Bannister*, Colo., 607 P.2d 987 (1980), is dispositive of this case. Our judgment in that case, however, was set aside by the United States Supreme Court on a petition for writ of certiorari in *Colorado v. Bannister*, —— U.S. ——, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980). The Supreme Court of the United States held that an exception to the warrant requirement exists when an automobile is stopped and the police have probable cause to believe that it contains evidence of a crime. Since the items seized were found in plain view in the automobile, the court concluded that a warrant was not required to open the car door and seize the items within.

*no,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *People v. Horne,* Colo., 619 P.2d 53 (1980). The factors considered in this determination are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.

█ We note that Vanatta testified that he had two opportunities to view the defendant, the first when he purchased food and drinks, the second when the robbery occurred. He testified that the lighting conditions in the restaurant were good. During both confrontations, Vanatta was no more than three to ten feet from the defendant. The description that he gave to the police was accurate when compared to the characteristics and clothing of the defendant when he was apprehended. Vanatta positively identified the defendant as the robber at the showup. The time between the confrontation and the robbery was approximately forty minutes. No suggestive comments were made by the police to Vanatta prior to his identification of the defendant.

We conclude, based upon the totality of the circumstances surrounding the confrontation, that the one–on–one showup did not deny the defendant due process of law. This determination leads us to the conclusion that the trial court's denial of the defendant's motion to suppress in–court identification was also correct.[11]

IV.

The defendant argues that because the aggravated robbery statute did not contain a *mens rea* element, it violated due process of law, and concurrently, that the trial

court failed to adequately instruct the jury on the *mens rea* element of aggravated robbery. The defendant did object during the trial to the instruction on the elements of the crime of aggravated robbery, but he did not raise the issue in his motion for new trial. Crim.P. 33(a) provides in part: "Only questions presented in [the motion for new trial] will be considered by the appellate court on review." Therefore, unless the failure of the trial court in this regard was plain error, reversal is not required. Crim. P. 52(b).

█ At the time of the defendant's trial, section 18–4–302(1)(b), C.R.S. 1973, did not contain a *mens rea* requirement on its face.[12] Clearly, crimes such as robbery and aggravated robbery which have a historical background in the common law must be construed to require a *mens rea* element. *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *People v. Washburn,* 197 Colo. 419, 593 P.2d 962 (1979). It is also true that a statute will be presumed to conform to constitutional requirements, section 2–4–201, C.R.S. 1973, and a culpable mental state will be implied from a particular statute which does not contain an intent element on its face. *People v. Naranjo,* Colo., 612 P.2d 1099 (1980). In our view, the *mens rea* element in section 18–4–302, C.R.S. 1973, is implied, and we reject the defendant's contention that the statute violated his right to due process of law.

Our result is supported by the fact that although the jury instruction on the elements of aggravated robbery did not contain a *mens rea* element, another instruction did instruct the jury that to constitute a crime, there must be the joint operation of an act forbidden by law and a culpable mental state of the defendant. This instruction said that the culpable mental state required for the commission of aggra-

11. The same factors set forth in *Manson v. Brathwaite, supra,* are applied to the determination of whether there is an independent basis for the in–court identification apart from an impermissibly suggestive out–of–court identification. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *People v.*

*Horne,* Colo., 619 P.2d 53 (1980); *Huguley v. People,* 195 Colo. 259, 577 P.2d 746 (1978).

12. This omission was changed by the addition of the culpable mental state of "knowingly" to section 18–4–302. Colo.Sess. Laws 1977, ch. 224, 18–4–302 at 963.

vated robbery was "intentionally," and that this element was as much an element of the crime as the act, and, therefore, must be proven beyond a reasonable doubt. Consequently, we conclude that any error in the instruction was not plain error.

## V.

The defendant's final argument is that the trial court erred when it failed to grant his motion for mistrial. During the trial, Vanatta testified that $267 was missing from the cash register after the robbery. Further examination revealed that Vanatta had not participated in counting the money or checking the register receipts and that his source of information was the restaurant manager. The trial court sustained defendant's hearsay objection, ordered the response stricken from the record, and instructed the jury to disregard the testimony. Later, Officer McCauley testified that his search of the car led to the discovery of $266. At the close of the trial, defense counsel made a motion for mistrial on the ground that Vanatta's hearsay testimony was so prejudicial that the trial court's instruction to disregard it was not adequate to assure the defendant a fair trial. We disagree.

 A motion for mistrial should only be granted under circumstances which demonstrate substantial and undue prejudice to the defendant. *People v. Goff*, 187 Colo. 103, 530 P.2d 514 (1974); *Howe v. People*, 178 Colo. 248, 496 P.2d 1040 (1972). The jury was instructed to disregard the hearsay evidence, and it must be presumed that the jury acted consistently with the instruction given by the court. *People v. Goff, supra.* A mistrial is addressed to the sound discretion of the court, and we find no abuse of that discretion in this case.

Accordingly, the judgment of conviction is affirmed.

QUINN, J., dissents.

QUINN, Justice, dissenting:

I respectfully dissent from Part III of the majority opinion. The defendant's motion to suppress the showup–identification should have been granted because of undue and unnecessary suggestibility attaching to that confrontation, and the evidence of that identification should not have been admitted at trial.

While reliability is the linchpin in determining the admissibility of identification testimony, *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977), the one–on–one confrontation in this case was so inherently and unnecessarily suggestive as to make any identification elicited therefrom unreliable under constitutional standards of admissibility.

The Supreme Court in *United States v. Wade*, 388 U.S. 218, 234, 87 S.Ct. 1926, 1936, 18 L.Ed.2d 1149, 1161 (1966), aptly characterized the identification technique employed here when it noted that "it is hard to imagine a situation more clearly conveying the suggestion to the witness that the one presented is believed guilty by the police." *See also Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The underlying rationale of the *Wade–Gilbert–Stovall* trilogy is the protection of the integrity of the fact–finding process from mistaken identifications which are incapable of repair at trial and whose irreparability is brought about by suggestive pre–trial techniques similar to that employed in this case.

*Stovall v. Denno, supra*, established a basis in due process of law for suppression of unnecessarily suggestive pre–trial confrontations. *Stovall* teaches that a high degree of necessity—such as an eye witness in critical condition—will permit a high degree of suggestibility in the identification technique. Thus, *Stovall* expressly sanctions a showup under true emergency conditions. The converse of this principle, however, is applicable to this case, namely, a low degree of necessity cannot justify a high level of suggestibility. *See, e. g., Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

Here, there was no showing of the type of necessity or urgency that might otherwise have justified the unduly suggestive technique employed by the police. The witness—Vanatta would have been available for a traditional line—up procedure at a subsequent time and such line—up procedure, in contrast to the showup, would have served as a useful method of learning the truth about the identity of the robber. *See C. Whitebread, Criminal Procedure* § 18.05 (1980). The mere fact that the police have apprehended a suspect does not provide the necessity or urgency that constitutionally permits the return of a suspect to the scene of the crime for a showup with the victim while the suspect, wearing clothing similar to the robber, is seated in the front seat of the police vehicle.

If an arrest in the field constitutes an exception to the constitutional prohibition against unnecessarily suggestive pre—trial identification techniques, then the exception has swallowed the rule and there is no such creature as an unduly suggestive showup. The controlling precedents of the United States Supreme Court indicate otherwise. *E. g., Manson v. Brathwaite, supra; Foster v. California, supra.* In fact, *Manson* requires trial courts to weigh against the indicia of reliability "the corrupting effect of the suggestive identification itself," 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154, in resolving motions to suppress identification testimony. The trial court failed to apply the proper standard in this case and the pre—trial identification evidence should have been excluded as the product of an unnecessarily suggestive showup.

I would reverse the conviction and remand for a new trial.