**PEOPLE of the State of Colorado,**
**Plaintiff-Appellant,**

v.

**Joseph A. BELL, Defendant-Appellee.**

**No. 84SA104.**

Supreme Court of Colorado,
En Banc.

April 15, 1985.

Norman S. Early, Jr., Dist. Atty., Brooke Wunnicke, Chief Deputy Dist. Atty., William P. Buckley, Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Scott D. Wolfe, Deputy State Public Defender, Denver, for defendant-appellee.

KIRSHBAUM, Justice.

The People, pursuant to C.A.R. 4.1 and section 16–12–102, 8 C.R.S. (1978), appeal the trial court's order prohibiting the introduction of certain evidence by the prosecution against the defendant, Joseph A. Bell, in a pending criminal prosecution. The trial court in essence concluded that a police officer's decision to stop a vehicle in which defendant was a passenger was not based upon reasonable suspicion that the defendant had recently engaged in criminal conduct. We reverse.

Defendant was charged with one count of unlawful distribution, manufacturing, dispensing, sale and possession of a controlled substance.[1] He filed a motion to suppress all of the prosecution's evidence on the ground that it was obtained as a result of an unlawful seizure without a search warrant in violation of section 16–3–103, 8 C.R.S. (1978 & 1984 Supp.), Crim.P. 41, and the Colorado and federal constitutions. At the hearing on defendant's motion, the following facts were established.

On November 1, 1983, at approximately 11:15 p.m., Denver Police Department Officer Frank Padilla received a police radio broadcast describing an offense that had just occurred in the parking lot of a White Spot restaurant located at 601 East Colfax Avenue. Officer Padilla and his partner responded by motorcycle to the call within five or six minutes and spoke with the victim. The victim related that he had been speaking with a black man who had a scraggly beard and a rather large Afro hairstyle, when the man threatened him with a gun. The victim said that he ran into the White Spot to call the police, and that when he returned to his car his briefcase was missing.

Officer Padilla got on his motorcycle and began patrolling the immediate area. Shortly thereafter he noticed an automobile leaving from behind a lounge located next to the White Spot. Officer Padilla testified that he "looked into the back seat of the

---

1. Defendant was charged by felony information with violation of § 18–18–105, 8 C.R.S. (1984 Supp.).

car ... and I noticed in the back seat was a black male with a bearded face [who] had somewhat of a large Afro—it wasn't a short Afro—and he looked back at me and kind of, he looked startled. He looked frightened and ... he looked away and then he looked back at me...." As the car continued down the street, the man in the back seat, who is the defendant, turned and lowered himself, as if to hide. Officer Padilla then drove up to the right-hand side of the automobile and stopped it approximately one block away from the White Spot. As he stopped the vehicle, Padilla noticed that a police patrol car with flashing lights had appeared behind him.

Among the occupants of the patrol car was Denver Police Department Officer Dale Wallis.[2] Officer Wallis testified that from his seat in the police car he saw defendant attempt to lie down as Officer Padilla approached the vehicle. Officer Wallis also testified that as the automobile stopped he saw defendant reach with his right hand into a pocket of his coat, pull something out, and place that item on the car seat.

When the three occupants of the vehicle exited at Officer Padilla's request, Officer Padilla patted defendant down, but found no weapons on his person. At this point Officer Wallis informed Officer Padilla that defendant had removed something from a coat pocket and had dropped it on the back seat of the automobile. Believing that the item might be a weapon, Officer Wallis approached the car and observed a plastic package lying on the back seat. The package contained a white powder later identified as a controlled substance. Officer Wallis seized the package, and Officer Padilla then placed defendant under arrest for possession of a controlled substance.[3]

At the conclusion of the suppression hearing, the trial court noted that the facts presented a close case, but that the decisive circumstance was the discrepancy between the description of the suspect and the actual physical appearance of defendant. With regard to this factor, the trial court stated as follows:

> Well, I would make the finding that concerns me the most, and that is that the officer was told that the suspect had a bearded face and there was reference to a scraggly beard and a large [A]fro and that he was a Negro. And Officer Padilla, who was on a motorcycle, came alongside of the car in which the Defendant was in the back seat; he looked into the back seat and he said he saw a person that fit the description.

> But we have a photograph, which is Defendant's Exhibit 1, of the Defendant and shows that he has no beard, he does have a mustache, and I would hardly say that it is a large [A]fro. So I feel that there are two elements lacking as far as the Defendant fitting the description of the person that they were seeking, not having a large [A]fro and not having a beard, and he looked in and could see apparently in the car.

> And in the Court's view, that is not sufficient evidence to warrant a *Stone* stop. I'm basing it essentially on the description that was given to Padilla as the description of the person who had committed this crime.

> . . . .

> Now, I, of course, would find that the vehicle was very near where this crime had been committed ... and that, of course, is grounds for a *Stone* stop and made it difficult for the Court. It was right in the vicinity where the crime was committed and very shortly thereafter. But I feel that the Defendant not fitting the description is sufficient to concern the Court and not be able to make that full finding and to warrant the *Stone* stop.

---

2. The record does not reveal whether Officer Wallis was responding to the broadcast regarding the armed robbery.

3. The passenger in the front seat of the car was also placed under arrest on an outstanding traffic warrant.

The trial court then granted the motion to suppress the evidence.

As the trial court recognized, in limited circumstances a police officer having less than probable cause to arrest may nevertheless subject an individual to a limited investigatory stop consistent with the requirements of the Fourth Amendment of the United States Constitution, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the protections against warrantless governmental intrusions contained in article II, section 7, of the Colorado Constitution. *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). *See* § 16–3–103, 8 C.R.S. (1984 Supp.). Three conditions must exist to justify such an investigatory stop: (1) the police officer must have an articulable and specific basis in fact, *i.e.,* a reasonable suspicion, for suspecting that criminal activity has occurred or is about to occur; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *People v. Wells,* 676 P.2d 698 (Colo.1984); *People v. Tate,* 657 P.2d 955 (Colo.1983); *Stone,* 174 Colo. 504, 485 P.2d 495. As we formulated the rule in *Stone:* "when an officer reasonably suspects that the person has committed a crime or is about to commit a crime and the officer has not identified the person he legally may stop him to question him about his identity." 174 Colo. at 509, 485 P.2d at 497.

At the heart of the reasonableness limitation lies the requirement that any seizure permitted in circumstances not constituting probable cause must be based upon specific, objective and articulable facts showing that society's legitimate interests require the seizure. *People v. Smith,* 620 P.2d 232 (Colo.1980). The nature and extent of the governmental interests involved in effecting the stop must be balanced against the affected individual's constitutional right to protection from unreasonable searches and seizures. *Id.* at 235.

A court faced with difficult questions concerning the sufficiency of the basis for a particular *"Stone"* stop must determine whether the totality of the circumstances provides the officer with a particularized and objective basis for suspecting that an individual is or has been engaged in criminal activity. *People v. Hazelhurst,* 662 P.2d 1081 (Colo.1983). The specific facts known to the officer immediately prior to the intrusion, together with rational inferences based upon those facts, are critical. *People v. Thomas,* 660 P.2d 1272 (Colo.1983). "The touchstone supporting police action is the specificity of the information upon which they act." *Hazelhurst,* 662 P.2d at 1084–85.

Recently, in *People v. Mascarenas,* 666 P.2d 101 (Colo.1983), this court noted the following factors which in any given context may be considered material to a determination of whether an investigatory stop is permissible:

"(1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in some criminality of the type presently under investigation."

*Id.* at 108 (quoting 3 W. LaFave, *Search & Seizure* § 9.3, at 84 (1978)). The trial court, as previously quoted, noted that many of these factors were present—the car was seen leaving the scene of the incident, the suspect's conduct reasonably aroused suspicion, and these suspicious activities occurred within a few minutes of the reported offense. We thus must consider whether the trial court correctly evaluated the discrepancy between the known description of the alleged perpetrator of the armed robbery and the physical appearance of defendant when Officer Padilla decided to stop the car.

In a photograph taken at the jail the morning subsequent to his arrest, defendant appeared clean shaven except for a moustache that curled just below the corners of his mouth and a small, barely visible clump of hair below his lower lip. He did have sideburns, but they did not reach below his earlobes. His hair was styled in an Afro cut, but not a particularly large Afro.

At the suppression hearing, Officer Padilla was clear that he thought he observed a person matching the known description of the assailant when he observed defendant in the back seat of the car. The circumstances of the observation did not constitute optimum conditions for accurate identification: the car was moving away from both the observing officer and the scene of the robbery when the initial sighting occurred, the time was close to midnight, and defendant was attempting to avoid being seen by the officer.

The fact that defendant did not in fact have a beard does not answer the question whether, considering all of the circumstances of the fleeting situation, a reasonably cautious police officer could form a reasonable suspicion that the person in the back seat of the car had committed the reported offense. As a general rule, the more particularized the description provided by the witness, in the sense that more points of comparison are provided, thereby narrowing the relevant universe of possible suspects, the greater the chance that there will be a reasonable basis in fact for making a temporary seizure of a particular person. *See* 3 W. LaFave, *Search & Seizure* § 9.3, at 86 (1978). Thus, the critical inquiry concerning the adequacy of a description is whether it permits selectivity. It does not necessarily follow, however, that there must always be several points of comparison or that a person may not be lawfully stopped because all points of comparison do not match. "What must be taken into account is the strength of those points of comparison which do match up and whether the nature of the descriptive factors which do not match is such that an error as to them is not improbable...." *Id.* at 88.

The fact that defendant did have an Afro haircut of some dimension somewhat distinguished defendant from the general population of black males and at the least represents a common characteristic between defendant and the known description of the assailant. In *People v. Smith*, we noted that the combination of several facts taken as a whole may constitute a reasonable suspicion justifying an investigatory stop even though none of those facts considered in isolation would support such a stop. Thus, in *Smith* we pointed out that an officer looking for a black male suspect who saw a black woman driving an automobile slowly in a town in which few blacks lived could not, on the basis of those facts alone, form a reasonable suspicion justifying an investigatory stop of the car. Nevertheless, we held that the stop was justified because, in addition to those facts, the automobile was sighted approximately fifteen minutes after the commission of the crime, approximately five blocks from the scene of the crime, and the officer had noticed what appeared to be a head covered with black bushy hair moving in the car. *Smith*, 620 P.2d at 236; *see also People v. Perez*, 690 P.2d 853 (Colo.1984).

The trial court did not find that Officer Padilla's testimony was fabricated or incredible. Nor does the evidence support any inference that Officer Padilla obtained a sustained close-up view of defendant prior to the stop. To the contrary, the evidence establishes that defendant sought to avoid direct scrutiny by Officer Padilla after the initial brief glimpse. It is true that furtive gestures alone are not generally sufficient to support a reasonable suspicion that the person so acting has committed or is about to commit an offense. *Thomas*, 660 P.2d 1272. Defendant's furtive gestures here, however, are important primarily because they made careful observation impossible until the stop was made.

■ We conclude that, under all of the circumstances presented to Officer Padilla, his suspicion that the person he observed in

the back seat of the moving car was the person described as the perpetrator of an armed robbery was supported by an articulable and specific basis in fact, was reasonable, and therefore justified the limited stop of the automobile for investigatory purposes only. His search of defendant for weapons was appropriately limited; indeed, defendant does not challenge the scope of the search. The fact that defendant did not have a beard does not permit the conclusion that Officer Padilla did not have a reasonable suspicion based on specific and articulable facts that the person in the automobile was the person described as the perpetrator of an armed robbery.

Order reversed.

DUBOFSKY, J., does not participate.