No. 79SA380

**The People of the State of Colorado v. Ernest William Warren**

(612 P.2d 1124)

Decided June 16, 1980. Rehearing denied July 7, 1980.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, David K. Rees, Assistant Attorney General, for appellee.

J. Gregory Walta, State Public Defender, Ilene P. Buchalter, Deputy, for defendant-appellant.

*En Banc.*

JUSTICE QUINN delivered the opinion of the Court.

The defendant pled guilty to two counts of first-degree sexual assault, a class 2 felony carrying a term of imprisonment of not less than ten nor more than fifty years,[1] and admitted to the use of a deadly weapon during the assaults, thereby subjecting himself to the mandatory sentencing pro-

---

[1] Section 18-3-402(2), C.R.S. 1973 (1978 Repl. Vol. 8). Sexual assault in the first-degree is a class 3 felony unless the offender causes submission of the victim by the use of a deadly weapon, in which case it is a class 2 felony.

visions for crimes of violence.[2] He received concurrent sentences of eighteen to thirty years to the Colorado State Penitentiary and he challenges the sentences as excessive. He also claims entitlement to re-sentencing under the presumptive sentencing provisions of the 1977 version of House Bill 1589.[3] We affirm.

The defendant was charged in a seven-count information with two counts of first-degree kidnapping,[4] two counts of first-degree sexual assault,[5] one count of aggravated robbery,[6] and two counts of using a deadly weapon during the commission of sexual assault.[7] The dates of the alleged offenses were January 29, 1978, and February 17, 1978, and a different victim was involved in the separate episodes. The defendant entered a plea of guilty on July 28, 1978, to two counts of sexual assault in the first degree, and admitted to the use of a hand gun during the commission of the crimes. The remaining counts were dismissed on the motion of the District Attorney. Proceedings were commenced under the Colorado Sex Offender's Act of 1968[8] but were subsequently terminated by the trial court.[9] On October 19, 1978, the court sentenced the defendant to concurrent terms of not less than eighteen nor more than thirty years on each count of sexual assault in the first degree.[10]

## I.

The defendant first argues that the concurrent sentences of eighteen to thirty years are excessive. His argument is based on the following selective biographical facts: his age of 25 years, the absence of any juvenile record, and a term of military service for one and one-half years. A review of the record indicates that the sentences are not excessive.

 We recognized in *People v. Duran,* 188 Colo. 207, 533 P.2d 1116 (1975), that, by its very nature, sentencing is a discretionary act that is not subject to scientific precision. We noted that one of the objectives of appellate review of sentences is the correction of sentences that are

---

[2] Section 16-11-309, C.R.S. 1973 (1978 Repl. Vol. 8).

[3] Colo. Sess. Laws 1977, ch. 216, 861-88.

[4] Section 18-3-301, C.R.S. 1973 (1978 Repl. Vol. 8).

[5] Section 18-3-402(2), C.R.S. 1973 (1978 Repl. Vol. 8).

[6] Section 18-4-302, C.R.S. 1973 (1978 Repl. Vol. 8).

[7] Section 16-11-309, C.R.S. 1973 (1978 Repl. Vol. 8).

[8] Section 16-13-201 *et seq.*, C.R.S. 1973 (1978 Repl. Vol. 8).

[9] Section 16-13-209, C.R.S. 1973 (1978 Repl. Vol. 8).

[10] Prior to sentencing the trial court appointed two psychiatrists to examine the defendant in connection with possible commitment as a sex offender. Section 16-13-207, C.R.S. 1973 (1978 Repl. Vol. 8). Both psychiatrists filed reports in which they concluded that the defendant, if at large, would constitute a threat of bodily harm to members of the public; that he was not mentally deficient; and that he could not be adequately supervised on probation. The prognosis for effective psychiatric treatment of the defendant as a sex offender was poor. The psychiatrists recommended that any treatment program be instituted by means of institutional transfer after the defendant was sentenced. The trial court followed this recommendation and included in its sentence an order that the defendant be transferred to the Colorado State Hospital for treatment, and then be returned to the penitentiary at such time as the hospital deemed appropriate.

excessive in length, taking into account the nature of the offense, the character of the offender, and the protection of the public. *People v. Malacara,* 199 Colo. 243, 606 P.2d 1300 (1980); *Triggs v. People,* 197 Colo. 229, 591 P.2d 1024 (1979); section 18-1-409(1), C.R.S. 1973 (1979 Supp.); C.A.R. 4(c) (amended November 13, 1979); *ABA Standards Relating to Appellate Review of Sentences,§* 1.2.

Oftentimes, probation is a desirable disposition in criminal cases because it promotes a rehabilitative program that prevents or deters subsequent criminality by the offender and fosters his productive re-integration into the community at minimal cost to the public fisc. *ABA Standards Relating to Probation,* § 1.2. However, while rehabilitation may be the preferred method for preventing crime, an extended term of confinement is sometimes necessary in order to protect the public from further criminal activity by the offender and to adequately provide for individual deterrence and correction. *ABA Standards Relating to Sentencing Alternatives and Procedures,* § 2.5.

The public interest in safety and deterrence is properly a focal point of the sentencing decision in crimes of grave personal violence or abuse, particularly when committed by a repeat-offender. *E.g., Triggs v. People, supra; see also, People v. Strong,* 190 Colo. 189, 544 P.2d 966 (1976); *People v. Euresti,* 187 Colo. 266, 529 P.2d 1319 (1975). In such cases the court should strive for a sentencing result that addresses both the need of society for protection and the need of the defendant for correction. When a sentence of an extended duration is imposed, the record must establish a clear justification in fact for the trial judge's action. *People v. Duran, supra; People v. Strong, supra.*

Here, the record does establish a clear justification for the sentencing judge's action in imposing concurrent sentences of eighteen to thirty years. The offenses to which the defendant pled guilty consisted of serious acts of sexual abuse perpetrated against two victims on separate occasions. On each occasion the defendant threatened and caused submission of the victim by the use of a gun. In the sexual assault on January 29, 1978, the defendant accosted the victim in the downtown streets of Greeley during the evening hours, forced her at gun point into an automobile, drove her to an unknown location, and there sexually assaulted her. In subsequently releasing the victim, the defendant threatened to kill her if she informed the police. The sexual assault on February 17, 1978, was committed at about 1:30 a.m., after the defendant had followed the victim to her residence in a vehicle, grabbed her as she left her vehicle, held a revolver to her head with the threat to kill her, robbed her of $2.00 at gun point, and then took her to a nearby garage where the sexual assault took place.

The character of the defendant was such that probation was not a viable alternative for the court. He had been previously convicted of larceny

from the person in 1973, for which he received probation, and forcible rape in 1974, for which he was sentenced. Additionally, the presentence report reflects that during the pendency of the charges in this case, the defendant escaped from the Weld County jail and remained at large for several days.

Under the circumstances of this case the public interest in safety and deterrence was of ranking importance to the sentencing judge. The defendant's repeated acts of personal violence required the sentencing judge to consider society's interest in protection and individual deterrence, and to address the need of the defendant for corrective confinement. The sentencing judge adequately explained on the record the reasons for imposing the sentence, and that record presents a clear justification, based upon the evidence, for the sentencing decision.

## II.

■ The defendant also argues that he is entitled to re-sentencing under the presumptive sentencing provisions of the 1977 version of House Bill 1589.[11] These provisions would have become effective on July 1, 1978, but for subsequent amendatory legislation postponing their effective date to April 1, 1979.[12] In this regard the defendant contends that the postponement of the effective date of House Bill 1589 resulted from an impermissive convening of the General Assembly by the Governor in violation of the separation of powers doctrine. *Colo. Const.*, Art. III.

Additionally, the defendant contends that the legislative amendment to House Bill 1589 in March 1979,[13] which made the presumptive sentencing provisions prospective only and ineligible for retroactive application based on changed legal standards under Crim. P. 35(b)(1)(VI),[14] infringes on this court's rule-making power under Article IV, Section 21, of the Colorado Constitution.

---

[11] Colo. Sess. Laws 1977, ch. 216, 861-88. Under the 1977 version of H.B. 1589 the presumptive sentence for a class two felony was seven and one-half years. Colo. Sess. Laws 1977, ch. 216 at 867.

[12] Colo. Sess. Laws 1978, First Extraordinary Session, ch. 1. The effective date was subsequently changed to July 1, 1979, upon the enactment in March 1979 of an amended presumptive sentencing law. Colo. Sess. Laws 1979, ch. 157, 664-672.

[13] Colo. Sess. Laws 1979, ch. 157, Sec. 25 at 672:
"This act shall take effect July 1, 1979, shall apply to offenses committed on or after said date, and, notwithstanding any other provision of law or court rule, shall not apply to offenses committed prior to said date."

[14] Crim. P. 35(b)(1)(VI) provides for post-conviction relief if "there has been a significant change in the law subsequent to July 1, 1972, applied to applicant's conviction or sentence, requiring in the interests of justice retroactive application of the changed legal standard . . . ." By amendment to Crim. P. 35, effective November 13, 1979, Crim. P. 35(c)(1) now permits an application for post-conviction relief by a person whose appeal is pending, when the application is based on a significant change in the law which, when applied to the applicant's conviction or sentence, allows in the interests of justice retroactive application of the changed legal standard.

Recently, we rejected identical arguments in *People v. McKenna,* 199 Colo. 452, 611 P.2d 574 (1980). We held in *McKenna* that the Governor's call for the extraordinary session in 1978, which postponed the effective date of House Bill 1589, did not unconstitutionally usurp the law-making power of the General Assembly. We also held that the prospective provisions of Section 25 of House Bill 1589, as amended in March 1979, did not unconstitutionally infringe upon the rule-making power of the Supreme Court.

The judgment is affirmed.