**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Juan Batista MARTINEZ, aka Johnny Q. Martinez, Defendant-Appellant.**

**No. 79SA305.**

Supreme Court of Colorado, En Banc.

May 11, 1981.

---

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., David K. Rees, Chief, Appeals Litigation Section, Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Norman R. Mueller, Deputy State Public Defender, Denver, for defendant-appellant.

LOHR, Justice.

The defendant, Juan Batista Martinez, seeks appellate review of the propriety of the sentences imposed upon him by the Huerfano County district court based upon his jury trial convictions for second-degree burglary, section 18-4-203(1), C.R.S.1973 (1978 Repl.Vol. 8), and misdemeanor theft of property having a value less than fifty dollars, section 18-4-401(2)(a), C.R.S.1973 (1978 Repl.Vol. 8). He challenges as excessive the concurrent sentences of twenty-one years and seven months to twenty-five years for burglary and six months for theft. He also argues that he is entitled to be resentenced under the provisions of House Bill 1589, 1977 Colo.Sess.Laws ch. 216, 18-1-105 at 867. We find that the lengthy sentence for burglary is not adequately supported by the record and so vacate the sentences[1] and remand this matter to the trial court for further proceedings.

The defendant has the right to one appellate review of the propriety of his sentence, "having regard to the nature of the offense, the character of the offender, and the public interest, and the manner in which sentence was imposed, including the sufficiency and accuracy of the information on which it was based." Section 18-1-409(1), C.R.S.1973 (1978 Repl.Vol. 8); C.A.R. 4(c) (as amended effective November 13, 1979); *People v. Malacara,* Colo., 606 P.2d 1300 (1980); *see* IV *ABA Standards for Criminal Justice, Appellate Review of Sentences,* 20-1.2 (2d Ed. 1980). The defendant does not object to the manner of imposition of the sentence or to the adequacy or correctness of the information upon which the judge relied. His contention is that on the basis of that information the sentence imposed upon him is inappropriately severe. At the relevant time, the authorized range of sentencing for second-degree burglary of a dwelling (a class 3 felony) was a minimum of five years and a maximum of forty years imprisonment. Section 18-1-105(1), C.R.S. 1973 (1978 Repl.Vol. 8). Six months imprisonment was the maximum sentence authorized for theft of property of a value less than fifty dollars (a class 3 misdemeanor). Section 18-1-106, C.R.S.1973 (1978 Repl. Vol. 8). We first outline the relevant facts appearing in the record and then apply the appropriate sentencing criteria to those facts to determine whether the sentences are justified.

The criminal activities for which the defendant was sentenced are only sketchily outlined in the record. We can tell only that he entered a dwelling and stole a sleep-

---

1. The sentences for burglary and theft are related as they are based upon the same incident and were imposed at the same time. We va-

cate both sentences to permit the trial judge full flexibility on resentencing, although we do not find the sentence for theft to be flawed.

ing bag, jewelry and clothes of a total value less than fifty dollars. The property was recovered so no restitution was appropriate. The judge who imposed the sentences presided over the jury trial which resulted in the defendant's burglary and theft convictions and so was privy to details of the offenses which are not part of the record before us.

The defendant is an unmarried man without dependents. At the time of sentencing he was thirty-nine years of age. The defendant lived with his sister. He had no record of steady employment but had worked for short periods of time for various employers. The defendant acknowledged that he used alcohol excessively. Otherwise, his health was satisfactory.

In reviewing the defendant's juvenile and criminal record the trial judge took notice of all the files in his court relating to the defendant and considered the Federal Bureau of Investigation record and the Pueblo municipal court record attached to the presentence report.

The defendant's prior record of violations of the law began in 1952, when he was only fourteen. A list of the charges and of the disposition thereof referred to in the trial judge's findings is as follows:

| | Charge | Date of Disposition | Disposition |
|---|---|---|---|
| JUVENILE: | Burglary | 11-29-52 | Committed to Industrial School. Granted 2 years probation. |
| | Theft | 2-18-54 | Probation in prior case revoked. Committed to Industrial School. |
| | Burglary/Theft | 3-21-56 | Committed to Colorado State Reformatory. |
| ADULT: | Burglary | 7-1-58 | Committed to Colorado State Reformatory. Parole granted. |
| | Burglary | 9-4-59 | Parole revoked. Recommitted to Colorado State Reformatory. |
| | Assault with Intent to Commit Robbery | 4-4-63 | Three to six years in Colorado State Penitentiary. Parole granted. |
| | Parole Violation | 5-2-66 | Returned to penitentiary. |
| | Theft | 6-70 | Case dismissed. |
| | Felony Theft, Plea of Guilty to Misdemeanor Theft. | 8-16-74 | 6 months in jail with 30 days actual confinement and probation. |
| | Probation Revoked | 8-31-75 | Served remainder of 6 months. |
| | Robbery | 2-76 | Case dismissed.[2] |

The trial judge also noted that the defendant's record in Pueblo County was replete with various sentences in municipal court for drunkenness, vagrancy and other

2. Neither the trial court's findings nor the presentence investigation report specifies the details of these charges.

offenses including shoplifting and larceny.[3] The court then expressed its reasoning for selecting the sentences imposed as follows:

"In reviewing all of this criminal history as to this Defendant that dates all the way back to 1953 through the present conviction in 1978, a period of some 26 years, it is apparent to this Court the Defendant has lived what we call a life of crime, and has not learned one thing from all of these sentences, all the jail time he has served, and even parole has been revoked. In view of all of this there is no question in the Court's mind that society has to be protected from this Defendant, and there is no point in saying that the Court should consider a minimal sentence in view of the history that he has. I have considered very seriously what the amount of sentence should be, but in view of his past criminal record, the Court does not see that it has any alternative but to sentence the Defendant to a substantial sentence."

## I.

■ We now turn to the legal standards by which the defendant's sentences are to be tested. The considerations relevant to sentencing have been detailed in a number of recent decisions. *See People v. Cohen,* Colo., 617 P.2d 1205 (1980); *People v. Scott,* Colo., 615 P.2d 35 (1980); *People v. Watkins,* Colo., 613 P.2d 633 (1980); *People v. Warren,* Colo., 612 P.2d 1124 (1980); *see also People v. Duran,* 188 Colo. 207, 533 P.2d 1116 (1975). In each of these cases we have recognized that sentencing by its very nature is discretionary, and that accordingly a judge has wide latitude in reaching his decision on a particular sentence. *E. g., People v. Cohen, supra.* In the exercise of such discretion the trial judge must "consider the various factors of the case and arrive at a synthesis which is reflective of the interests of society and the defendant." *People v. Scott, supra,* 615 P.2d at 36. *See* III *ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures,* 18–3.2 (2d Ed. 1980); section 18–1–102.5(1), C.R.S.1973 (1978 Repl.Vol. 8) (1980 Supp.).[4]

In *People v. Warren, supra,* we recognized that ". . . an extended term of confinement is sometimes necessary in order to protect the public from further criminal activity by the offender and to adequately provide for individual deterrence and correction." *Id.,* 612 P.2d at 1126; *see* III *ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures,* 18–2.5 (2d Ed. 1980). On the other hand, considerations of public protection must be balanced against the rehabilitation needs and potential of a defendant. *People v. Cohen, supra.* In addition, it is important to consider the severity of a sentence in relation to the crime for which it is imposed. *See* section 18–1–102.5(1)(a), C.R.S.1973 (1978 Repl.Vol. 8) (1980 Supp.); *People v. Cohen, supra.* III *ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures,* 18–2.5(b)(iv) (2d Ed. 1980). No one of these factors should be emphasized to the exclusion of the others, *People v. Cohen, supra; People v. Duran, supra,* so that the sentence

---

**3.** The defendant's Federal Bureau of Investigation report also shows that on 8/3/73 he was arrested for "accessory to homicide." No disposition is reflected in the record. The trial judge did not mention this incident in his summary of the defendant's criminal history.

**4.** "18–1–102.5 *Purposes of code with respect to sentencing.*
(1) The purposes of this code with respect to sentencing are:
(a) To punish a convicted offender by assuring the imposition of a sentence he deserves in relation to the seriousness of his offense;
(b) To assure the fair and consistent treatment of all convicted offenders by eliminating unjustified disparity in sentences, providing fair warning of the nature of the sentence to be imposed, and establishing fair procedures for the imposition of sentences;
(c) To prevent crime and promote respect for the law by providing an effective deterrent to others likely to commit similar offenses; and
(d) To promote rehabilitation by encouraging correctional programs that elicit the voluntary cooperation and participation of convicted offenders."
Enacted in 1979, Colo.Sess.Laws 1979, ch. 157 at 668, this statute reflects standards for sentencing which have been a part of our law for a number of years. *See* section 18–1–102(1)(b), (c), C.R.S.1973 (1978 Repl.Vol. 8); *People v. Duran, supra.*

will neither "exceed a ceiling equal to that level justly deserved by the offender for the instant offense nor fall below a floor level necessary either to protect the public from further serious criminal acts by the defendant or to assure that the gravity of the offense is not depreciated." III *ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures*, 18–3.2(a)(i) (2d Ed. 1980).

In order to evaluate whether the selection of a sentence effects a proper balance, considering the nature of the offense, the character of the offender and the public interest, and so "reflect[s] a rational selection from various sentencing alternatives in a manner consistent with the dominant aims of the sentencing process," *People v. Watkins, supra,* we have required prospectively that where sentence to a correctional facility is involved the judge must state on the record the basic reasons for the imposition of sentence. *Id.*[5]

The record here supports the trial judge's conclusion that the defendant has not benefited from any of a number of opportunities to reform his conduct under probationary and parole supervision. Incarceration has

not caused the defendant to amend his conduct to conform to the law. The defendant's long record offers little promise that any sentencing alternative available to the trial judge will be successful in favorably altering the defendant's criminal behavior.

Although protection of the public from the defendant's criminal activities is an appropriate and important concern in selecting a sentence, the nature of the prospective harm must also be weighed in the balance. The only one of the defendant's convictions necessarily involving violence or threat of violence is his conviction in 1962 for assault with intent to commit robbery. The record reflects that the defendant had been a long-time member of the Huerfano County community, and his criminal record was based in large measure on incidents in that community. The trial judge examined files in his own court relating to the defendant's prior offenses and dating back to the juvenile record of this 39 year old man. Findings with respect to the circumstances of those offenses would be of great value to us[6] in assessing the proper weight to be given the defendant's criminal history.[7]

---

**5.** The beneficial effects of this practice include facilitation of appellate review; making available to the defendant the court's reasons for the sentence selected, thus enhancing the rationality of the process as perceived by the defendant and the public; and imposition of a disciplining effect on the court's own thought processes in fixing sentence. *People v. Watkins, supra; see* III *ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures,* 18–6.6 and commentary (2d Ed. 1980); IV *ABA Standards for Criminal Justice, Appellate Review of Sentences,* 20–2.3 and commentary (2d Ed. 1980).

The trial judge here did not have the guidance of *People v. Watkins, supra,* in imposing sentence.

**6.** We are aware that oftentimes a judge has no information as to the facts underlying convictions reflected in the presentence investigation report. We do not suggest that where such facts are not readily available the district attorney or the judge has an obligation to ferret them out.

**7.** The allocation of excessive weight to a defendant's past record in sentence selection can lead to some of the same undesirable consequences which have given rise to criticism of

the results of some habitual offender sentencing statutes. These consequences have been explained as follows:

> "The offenders actually incarcerated under such long-term provisions tend not to be the dangerous or professional criminal the legislature had in mind but, instead, woefully inadequate individuals 'for whom petty stealing represent[s] the line of least resistance.' As one federal correctional official has observed: 'In any representative group of such offenders we find a high percentage of chronic alcoholics, a variety of physical and intellectual handicaps and limitations, gross lack of work skill and experience, serious inadequacies in capacities to relate to other human beings, and a wide variety of other socially disabling characteristics.'"

III *ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures,* 18–4.4, commentary at 280 (2d Ed. 1980). A conclusion suggested by these criticisms, again in the habitual offender context, is that "... clearer criteria should be employed to distinguish the persistent offender who is dangerous to society from the one who is merely a nuisance to society." *Id.* at 282.

We do not wish to be understood as minimizing the seriousness of the crimes of burglary and

The trial judge was personally familiar with the nature of the offense which gave rise to the sentences under review but did not explain it on the record. The defendant's version, as set forth in the pre-sentence investigation report prepared by the probation officer, was:

> "I was working for Martin Romero at the time that I was arrested for taking a sleeping bag, jewelry and clothes. The stolen articles were found in an old shack behind the Fox Theater."

Notwithstanding the need for public protection, a sentence must bear some proportionality to the severity of the offense for which it is imposed. *See* section 18–1–10.2.-5(1), C.R.S.1973 (1978 Repl.Vol. 8) (1980 Supp.). We are unable to evaluate adequately whether that proportionality was achieved because of the lack of information in the present record.

█ The trial judge made careful and extensive findings with respect to the defendant's criminal record and poor prospects for rehabilitation. However, he did not make findings with respect to the seriousness of the offense for which the sentence was imposed or concerning the seriousness of the prior offenses as to which the judge had information. Such background information should have been taken into account in selecting the sentence, and we presume it was. Where, as here, a lengthy sentence is imposed, it is necessary that the record contain sufficient specificity with respect to the reasons for its imposition to enable an appellate court to make an informed review directed to each of the relevant sentencing considerations. *E. g., People v. Cohen, supra; see generally People v. Watkins, supra.* We do not hold that the twenty-one years and seven months to twenty-five years sentence for burglary is inappropriate; we conclude only that we are unable to evaluate its appropriateness fairly on the basis of the present record. Accordingly, we vacate the defendant's sentences and remand the matter to the district court for further consideration and resentencing, supported by a full statement of findings and reasons consistent with this opinion.

## II.

█ The defendant also contends that he is entitled to resentencing under the presumptive sentencing provisions of House Bill 1589, Colo.Sess.Laws 1977, ch. 216, 18–1–105 at 867. In *People v. McKenna,* Colo., 611 P.2d 574 (1980), we resolved the issues raised by the defendant adversely to his position, and we have adhered consistently to that decision. *E. g., People v. Soper,* Colo., 628 P.2d 604 (S.Ct. No. 79SA531 announced April 20, 1981); *People v. Scott, supra; People v. Watkins, supra.*

The defendant's sentences are vacated and this case is remanded for further proceedings consistent with this opinion.

LEE, J., dissents.

---

theft. However, many varieties of conduct of greatly differing adverse social consequences are described under the burglary and theft rubrics. In evaluating the appropriateness of a lengthy sentence it is helpful to know more precisely the nature of the defendant's criminal activity.