Jason Price ROCHA, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 84SC100.

Supreme Court of Colorado,
En Banc.

Jan. 13, 1986.

Rehearing Denied Feb. 24, 1986.

David F. Vela, Colorado State Public Defender, Karen A. Chaney, Jody Sorenson Theis, Thomas R. Williamson, Deputy State Public Defenders, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the unpublished decision of the court of appeals in *Rocha v. People* (No. 82CA1452, Jan. 19, 1984), which held that the district court did not abuse its discretion in sentencing the fifteen year old defendant, Jason Price Rocha, to the Department of Corrections for a term of twelve years, plus one year of parole, as the result of Rocha's guilty plea to second degree murder. We affirm the judgment of the court of appeals.

I.

The defendant was initially charged with one count of first degree murder after deliberation, § 18–3–102(1)(a), 8 C.R.S. (1978), and with a crime of violence, § 16–11–309(1)(a), 8 C.R.S. (1985 Supp.), arising out

of the shooting death of thirteen year old Scott Michael on April 7, 1982, in Jefferson County, Colorado. The defendant and the district attorney reached a plea agreement, resulting in the defendant's plea of guilty to second degree murder, § 18–3–103(1)(a), 8 C.R.S. (1978), in exchange for dismissal of the other counts. Second degree murder was a class 2 felony and carried a presumptive penalty of eight to twelve years plus one year of parole. § 18–1–105(1)(a)(I), 8 C.R.S. (1985 Supp.).

The facts underlying the crime, as relevant to the matter of sentencing, were fully set forth in a presentence report filed with the court. On April 7, 1982, the defendant and his friend Andy went gopher hunting in a field close to Deer Creek Junior High with a .38 caliber revolver, which the defendant had taken from his grandfather's house four days prior to the shooting, and a .22 caliber rifle. While in the field, they observed a Jefferson County patrol car. To avoid being found with the weapons and ammunition, they removed the ammunition from the rifle and placed the rifle and ammunition in a small hole in the ground. The defendant put the revolver in his waistband, concealing it with his jacket. He then decided to go to Deer Creek Junior High to see a friend.

The defendant entered the school while Andy waited outside. Shortly thereafter two boys, John and Scott, the victim, exited the school and joined Andy. When the defendant came out of the school, John called out to him. The defendant pulled out his revolver, placed the hammer in a cocked position, pointed it at John and said, "Freeze." John told the defendant that the gun was loaded. The defendant then turned the muzzle of the gun toward Scott, the gun discharged, and the bullet entered Scott's chest. After Scott dropped to his knees, the defendant asked him whether he was all right. Scott stood up, staggered a short distance, and then fell to the ground.

Moments later, according to Andy, the defendant threw away something which might have been the shells from the weapon.

The defendant and Andy fled the scene, but before running the defendant pleaded with Scott and John to say that the shooting was an accident. Although emergency medical assistance was called to the scene by the school's assistant principal, Scott Michael died approximately twenty minutes after the shooting. The defendant telephoned the Jefferson County Sheriff's Office from the home of an acquaintance and was later taken into custody.

The defendant had no prior history of serious misconduct, but, according to psychological evaluations, he suffered from depression and deep-seated personality disorders stemming from long-term family neglect, violence, and mistrust. These problems were such that, if not effectively treated, the defendant would pose a serious risk to himself and others. At the presentence hearing, several expert witnesses testified that the defendant would need long term intensive treatment extending over several years in order to adequately resolve his problems. These witnesses, as well as the probation officer who prepared the presentence report, were of the opinion that the court should commit the defendant to the Department of Institutions for placement in the Closed Adolescent Treatment Center, a treatment facility operated by the Department of Institutions, Division of Youth Services, rather than to the Department of Corrections, in order to permit the defendant to receive treatment appropriate to address his various problems.

The district court rejected this recommendation and instead sentenced the defendant to the custody of the Executive Director of the Department of Corrections for a term of twelve years, plus one year of parole, with credit for twenty-two days of presentence confinement.[1] The court indi-

---

1. Although the defendant was sentenced to the Department of Corrections, he has since been placed in the Closed Adolescent Treatment Center. This transfer was effected with the consent of the Department of Institutions and pursuant to an agreement between the Department of Corrections, the defendant, and the defendant's parents. The agreement provides that, although

cated that it was not ignoring the defendant's rehabilitative needs but that the gravity of the defendant's crime and society's interest in deterring such acts by others predominated in favor of the sentence imposed by the court. The court of appeals affirmed the sentence, holding that the district court did not abuse its discretion in its sentencing decision.

We granted certiorari to review the decision of the court of appeals. The defendant contends that, contrary to the court of appeals' decision, the sentencing court abused its discretion in committing him to the Department of Corrections rather than committing him to the Department of Institutions and that, even if the commitment to the Department of Corrections was appropriate, the term of twelve years is excessive.

## II.

Before addressing the defendant's specific claims, we briefly review the general standards applicable to a sentencing review. Sentencing is generally a discretionary decision which requires the sentencing court to weigh several factors.

In *People v. Warren* [200 Colo. 110, 612 P.2d 1124 (1980)], we recognized that "... an extended term of confinement is sometimes necessary in order to protect the public from further criminal activity by the offender and to adequately provide for individual deterrence and correction." ... On the other hand, considerations of public protection must be balanced against the rehabilitation needs and potential of a defendant.... In addition, it is important to consider the

severity of a sentence in relation to the crime for which it is imposed.... No one of these factors should be emphasized to the exclusion of the others ... so that the sentence will neither "exceed a ceiling equal to that level justly deserved by the offender for the instant offense nor fall below a floor level necessary either to protect the public from further serious criminal acts by the defendant or to assure that the gravity of the offense is not depreciated."

*People v. Martinez*, 628 P.2d 608, 611–12 (Colo.1981) (citations omitted); *see also People v. Cohen*, 617 P.2d 1205 (Colo.1980); *People v. Watkins*, 200 Colo. 163, 613 P.2d 633 (1980). The sentencing court is given broad discretion in imposing a sentence because it is in the best position to balance these factors and to tailor its sentence to the offense and the offender. *E.g., People v. Valencia*, 630 P.2d 85 (Colo.1981); *Triggs v. People*, 197 Colo. 229, 591 P.2d 1024 (1979).

In determining whether a sentencing decision is the product of the proper exercise of judicial discretion, an appellate court must focus on the nature of the offense, the character of the offender, and the public interest in safety and deterrence and evaluate whether the sentence actually imposed represents a fair accommodation of society's interest and the interest of the offender. *E.g., Valencia*, 630 P.2d 85; *Martinez*, 628 P.2d 608. When the sentence is for an extended term, the record must clearly show that the sentence to an extended term was the product of a rational selection from various sentencing alternatives in a manner consistent with the dominant aims of the sentencing process.[2]

---

physical custody is transferred to the Youth Services Division of the Department of Institutions, the Department of Corrections still retains legal custody of the defendant.

**2.** Section 18–1–102.5(1), 8 C.R.S. (1985 Supp.), lists the following purposes of the Colorado Criminal Code with respect to sentencing:

(a) To punish a convicted offender by assuring the imposition of a sentence he deserves in relation to the seriousness of his offense;

(b) To assure the fair and consistent treatment of all convicted offenders by eliminating unjustified disparity in sentences, providing fair warning of the nature of the sentence to be imposed, and establishing fair procedures for the imposition of sentences;

(c) To prevent crime and promote respect for the law by providing an effective deterrent to others likely to commit similar offenses; and

(d) To promote rehabilitation by encouraging correctional programs that elicit the vol-

*See, e.g., Martinez,* 628 P.2d 608; *Watkins,* 200 Colo. 163, 613 P.2d 633; *People v. Strong,* 190 Colo. 189, 544 P.2d 966 (1976). When the record clearly supports the sentencing judge's decision to impose an extended term of imprisonment, the decision will not be disturbed on appellate review. *E.g., People v. Scott,* 630 P.2d 615 (Colo. 1981); *Warren,* 200 Colo. 110, 612 P.2d 1124; *People v. Duran,* 188 Colo. 207, 533 P.2d 1116 (1975).

## III.

In assessing the validity of the defendant's twelve year sentence, we first consider the propriety of sentencing the defendant as an adult to the Department of Corrections rather than to the Department of Institutions, and we then address whether the twelve year term is excessive.

## A.

When criminal charges against a juvenile are either filed directly in the district court or are transferred from the juvenile court to the district court, the district court judge has the authority to make any disposition of the case that the juvenile court could have made, such as committing the defendant to the Department of Institutions as a juvenile, or to remand the case to the juvenile court for disposition. § 19–1–104(4)(c), 8 C.R.S. (1985 Supp.). The district court also has the authority to sentence a juvenile charged as an adult to the Department of Corrections for the term of imprisonment authorized for adults. § 16–11–301(1), 8 C.R.S. (1985 Supp.).

■ By statute, any commitment of the defendant to the Department of Institutions could only have been for two years, with a possibility of renewal for another two years, or in other words a maximum of

four years. § 19–3–114(3)(b) and (c), 8 C.R.S. (1978 & 1985 Supp.).[3] The record shows that the sentencing judge was concerned not only that such a short sentence would undermine the gravity of the defendant's crime but also that it could well result in the premature release of the defendant before his deep-seated emotional and psychological problems had been adequately treated. The crime of second degree murder is a grave offense which by definition involves the taking of human life knowingly. § 18–3–103(1)(a), 8 C.R.S. (1978). The court considered the gravity of the defendant's crime not to the exclusion of other factors but in conjunction with society's legitimate interest in deterrence and the defendant's need for corrective treatment. We cannot say under the record before us that the judge abused his discretion in sentencing the defendant as an adult to the Department of Corrections.

## B.

■ The defendant next argues that the term of the sentence was excessive and thus amounted to an abuse of discretion. Although a twelve year sentence for a fifteen year old offender is certainly severe, we cannot say that the term of the sentence was excessive.

■ While it is true that the defendant had no prior record of criminal conduct, the lack of a prior criminal record is only one factor to be weighed in the sentencing process and is not conclusive on the sentencing decision. *People v. Scott,* 200 Colo. 402, 404, 615 P.2d 35, 36 (1980). The likelihood of depreciating the seriousness of the offense in the eyes of the public is clearly a valid consideration in sentencing. *Watkins,* 200 Colo. at 168 n. 14, 613 P.2d at 637 n. 14. Moreover, a crime that demon-

untary cooperation and participation of convicted offenders.

**3.** In 1984 the Children's Code was amended by the addition of a new category, "aggravated juvenile offenders." § 19–1–103(2.1) 8 C.R.S. (1985 Supp.). Section 19–1–103(2.1)(a) defines an "aggravated juvenile offender" as any child "[t]welve years of age or older who is adjudi-

cated a delinquent child for an act which would constitute murder in the first degree or murder in the second degree if committed by an adult." If this provision had been in effect at the time of the crime in question, the defendant could have been committed to the Department of Institutions for a term of five years. § 19–3–113.2(1), 8 C.R.S. (1985 Supp.).

strates an egregious lack of respect for human life can well justify a lengthy sentence despite the lack of a prior record. *See Valencia*, 630 P.2d 85. We believe the nature of the offense in this case provides clear support for the sentence actually imposed.

■ Notwithstanding the severity of the offense, however, the defendant claims that the sole purpose of the sentence was punishment and that the court's failure to consider his rehabilitative needs amounted to an abuse of discretion. We disagree with the defendant's claim. In imposing sentence, the sentencing judge was not unmindful of the rehabilitative needs of the defendant. The judge specifically noted that the defendant would be able to obtain psychiatric treatment through the Department of Corrections, most likely at the State Reformatory. While the testimony presented at the sentencing hearing indicated that the Closed Adolescent Treatment Center, supervised by the Department of Institutions, was a preferable facility to treat the defendant's problems, the testimony also demonstrated that the Department of Corrections does have psychiatric treatment programs available to inmates. Furthermore, "while it is true that rehabilitation should be a factor in the decision-making process, it is only one of many considerations that must be weighed." *People v. Horne*, 657 P.2d 946, 948 (Colo. 1983).

The record clearly shows that the sentencing judge, in imposing a twelve year sentence to the Department of Corrections, adequately considered the gravity of the crime, the character and needs of the defendant, and the legitimate interest of society in protection and deterrence. We are thus satisfied that the sentence in question, although obviously severe, was nonetheless consistent in all respects with the principal purposes of sentencing.

The judgment is affirmed.

NEIGHBORS, J., dissents.

DUBOFSKY, J., joins in the dissent.

NEIGHBORS, Justice, dissenting:

Because I believe that the trial court seriously abused its discretion in sentencing the defendant to the Department of Corrections, I respectfully dissent.

The majority correctly states that sentencing is a discretionary decision which requires the trial court to weigh such factors as the gravity of the offense, the defendant's history of prior criminal conduct, the rehabilitation needs and potential of the defendant and considerations of public protection. However, "the discretion implicit in the sentencing decision is not an unrestricted discretion devoid of reason or principle." *People v. Watkins*, 200 Colo. 163, 166, 613 P.2d 633, 636 (1980). Thus, as the majority indicates, the record must clearly show that the sentence reflects a rational selection from various sentencing alternatives in a manner consistent with the dominant aims of the sentencing process, as set forth in section 18–1–102.5(1), 8 C.R.S. (1985 Supp.); maj. op. at 352. In other words, "the punishment should fit the offender and not merely the crime." *Watkins*, 200 Colo. at 166, 613 P.2d at 636, *quoting Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949).

In this case, all of the professional persons who have evaluted the defendant or his history, including the expert witnesses who testified at the sentencing hearing, are unanimous in their opinion that the defendant requires intensive mental health treatment extending over several years in order to resolve the deep-seated personality disorders which played a role in the defendant's shooting of his classmate. The type of treatment specifically recommended by the experts was a long-term program involving intensive supervision, staff confrontation, and interaction with other people with whom the defendant could learn the basics of "establishing safe relationships." The uniform opinion of the witnesses was that the defendant's prognosis would be significantly more favorable if he received the type of treatment recommended rather than minimal or no treat-

ment. Without therapeutic intervention, it was their opinion that the defendant would pose a serious risk to himself and to others.

Accordingly, the expert witnesses and the two probation officers responsible for preparation of the presentence report were unanimous in their view that the court should sentence the defendant to the Department of Institutions for placement in the Closed Adolescent Treatment Center. Their recommendation was based on several factors. First, the defendant had no prior criminal history. Second, the defendant was aware that "all was not well with him" and had sought psychiatric help shortly before the shooting. Third, a sentence to the Department of Corrections would provide little chance of correcting the diagnosed disorders because that Department does not have facilities or programs to treat disturbed juveniles. Finally, because renewal of the maximum two-year sentence to the Department of Institutions is usually granted as a routine matter, the defendant would receive four years of the intensive treatment necessary to resolve his psychological problems.

I take issue with the majority's affirmance of the trial court's finding "that the defendant would be able to obtain psychiatric treatment through the Department of Corrections, most likely at the State Reformatory." Maj. op. at 354. Indeed, the evidence is to the contrary. First, the record establishes only that the mental health needs of the inmates in facilities operated by the Department of Corrections are not appropriately met. Second, that Department has no facilities or programs which provide treatment for adolescent offenders. The poverty of the trial court's finding and reasoning is clearly demonstrated by the Department of Corrections' wise and humane decision to place the defendant in the Closed Adolescent Treatment Center.[1]

The record indicates that the trial judge focused on the gravity of the crime to the exclusion of other factors in sentencing the defendant to the Department of Corrections for a term of 12 years. With the statutory day-for-day good time credit required by section 17–22.5–301, 8 C.R.S. (1985 Supp.), the defendant will likely serve only six years in confinement. Thus, under the trial court's sentence, a deeply troubled young man will be released into the community in 1988 having received no meaningful psychotherapy. In contrast, a sentence to the Department of Institutions would have resulted in the defendant serving a four-year term and, most importantly, receiving the recommended treatment at a model facility. Protection of the public, an important sentencing consideration, will be ill-served by the trial court's sentence. All of the witnesses agreed that the defendant would be a significantly greater risk to himself and others upon his release from incarceration if he was not treated.

The tone of the trial court's ruling at the conclusion of the sentencing hearing, including the repeated admonition to the defendant to "stand on your own two feet," reflects either a shocking insensitivity to the psychiatric evidence presented or a total disregard of that evidence. I agree that the crime to which the defendant pleaded guilty "demonstrates an egregious lack of respect for human life." Maj. op. at 353–54. However, the sentencing alternative chosen by the trial court, when viewed in light of the evidence, only compounds a senseless tragedy.

In summary, all those involved in the sentencing recommendation believed that a sentence to the Department of Institutions for placement in the Closed Adolescent Treatment Center would best serve both the rehabilitation needs of the defendant and the need to protect society at large. Given the unanimity of the recommenda-

---

1. The fact that the defendant has been placed for treatment at the Closed Adolescent Treatment Center does not alter my views. Legal custody of the defendant remains with the Department of Corrections. Therefore, the possibility exists that he could be placed in a facility with hardened criminals at any time. My principal concern, however, is with the majority's view that the sentence imposed by the trial court did not constitute an abuse of discretion based on the information available at the sentencing hearing.

tion and the numerous factors supporting that recommendation, I believe that the trial court seriously abused its discretion in sentencing the defendant to the Department of Corrections. The sentence does not reflect a rational selection from the various sentencing alternatives available to the trial judge, nor does the record establish a clear justification for the sentence imposed. *People v. Scott*, 630 P.2d 615 (Colo.1981). I would reverse the judgment of the court of appeals and remand the case for sentencing to the Department of Institutions in accordance with the overwhelming evidence in the record.

I am authorized to say that JUSTICE DUBOFSKY joins me in this dissent.

