The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Scott CAMPBELL, Defendant–Appellant.

No. 01CA0446.

Colorado Court of Appeals,
Div. II.

May 9, 2002.

Rehearing Denied June 6, 2002.

Certiorari Granted Nov. 25, 2002.

Ken Salazar, Attorney General, Peter J. Cannici, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Thomas K. Carberry, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Scott Campbell, appeals the judgment of conviction entered following his guilty plea to possession of a controlled substance. He also appeals the sentence imposed. We affirm.

Police officers who were investigating two empty cars parked in a no-parking area stopped defendant to determine whether he owned one of the cars. Defendant told the officers that he did and, upon further ques-

tioning, led the officers to an area where he and three companions had been sitting. The officers found a box containing cocaine, two vials of liquid, and hypodermic needles.

The officers then conducted a pat-down search of defendant and discovered marijuana and a marijuana pipe. After being advised of his rights, defendant told the officers that he had been using cocaine. Upon searching defendant at the police station, the officers found a hypodermic syringe and a switchblade in his pockets.

Defendant was charged with possession of an illegal weapon and several drug-related crimes, including illegal use of a controlled substance, simple possession of a controlled substance, and distribution of a controlled substance.

Defendant's companions were also arrested. They told the officers that the cocaine belonged to defendant and that he had offered to let them use it. Two of defendant's companions later pleaded guilty to possession of a controlled substance (a class one misdemeanor) and received deferred judgments and sentences in exchange for their agreement to testify against defendant. The People dismissed the charges against defendant's third companion.

Defendant filed various pretrial motions. Although defendant did not specifically argue that the unlawful possession statute, § 18-18-405(1)(a), C.R.S.2001, violates equal protection guarantees, the People responded to the motions as if he had.

Before the trial court ruled on the motions, the parties entered into a plea agreement whereby defendant pleaded guilty to possession of a controlled substance, and the People agreed to dismissal of the remaining charges. The plea agreement provided that, upon ruling on defendant's motions, the trial court would determine whether the offense to which he pleaded guilty was a class four or a class five felony and that either party could appeal the trial court's ruling.

At the sentencing hearing, the trial court rejected defendant's equal protection challenge to the statute, concluded that the offense was a class four felony, and denied all other motions. The court then sentenced defendant to ten years in prison.

## I.

Defendant contends that the statutory scheme contained in the possession of a controlled substance statute, § 18-18-405, C.R.S.2001, and the unlawful use of a controlled substance statute, § 18-18-404, C.R.S.2001, violates equal protection principles. We note that in *People v. Warren*, 55 P.3d 809 (Colo.App. 2002), a division of this court rejected a similar argument, and we do likewise here.

■ Equal protection of the laws is guaranteed by both the Fourteenth Amendment and art. II, § 25 of the Colorado Constitution. *People v. Mozee*, 723 P.2d 117 (Colo. 1986). Under the Colorado Constitution, if a criminal statute sets different penalties for identical conduct, a person subject to the harsher penalty is denied equal protection unless reasonable differences exist between the proscribed behaviors. *Compare People v. Richardson*, 983 P.2d 5 (Colo.1999), *with United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

■ The statutory classification of crimes must be based on differences that are real in fact and reasonably related to the general purpose of the criminal legislation. *People v. Mumaugh*, 644 P.2d 299 (Colo. 1982). However, the General Assembly may impose greater penalties for acts that it perceives to have graver social consequences, even if the differences are only a matter of degree. *People v. Gonzales*, 973 P.2d 732 (Colo.App.1999).

■ Defendant first argues that § 18-18-405 violates equal protection because it classifies simple possession of a controlled substance as a class four felony, while § 18-18-404 classifies use of a controlled substance as a class five felony. Defendant contends that use necessarily includes possession, yet the "lesser" offense of possession carries a harsher penalty. We are not persuaded.

In *People v. Cagle*, 751 P.2d 614 (Colo. 1988), the supreme court rejected this argu-

ment, holding that "use" and "possession" are two separate offenses. "Possession of a controlled substance does not necessarily involve use.... [A person] does not use [a controlled substance] until he ingests [it]." *People v. Cagle, supra,* 751 P.2d at 620. Consequently, the statutory classification is based on real differences.

Further, penalizing possession more harshly than use is justified because, as long as one has possession of a controlled substance, he or she has the capability to distribute or dispense it. Because one who possesses a controlled substance poses a greater threat to the public peace, health, and safety, the imposition of a more severe sanction is justified. *People v. Cagle, supra.*

Defendant argues that we must revisit the question because, he contends, *People v. Villapando,* 984 P.2d 51 (Colo.1999), effectively overruled *People v. Cagle.* We do not agree.

The defendant in *Villapando* was charged with both use and possession of a controlled substance based solely on a toxicology report that showed marijuana residue in his system. The trial court dismissed the possession charge, relying on the statement in *People v. District Court,* 964 P.2d 498, 501 (Colo.1998) (*District Court I*), that "proof of the elements of the unlawful use offense does not establish the elements of the unlawful possession offense." The supreme court held that, because of the limited nature of a preliminary hearing, the trial court had erred in dismissing the possession charge after having found probable cause for the use charge.

The supreme court went on to say that "while an individual may unlawfully possess a controlled substance without voluntarily using it, it is simply not feasible for an individual to voluntarily use a controlled substance without also possessing it." *People v. Villapando, supra,* 984 P.2d at 54. In this regard, the court observed, "Thus, our conclusion that the statutory scheme analyzed in *District Court I* comports with the requirements of equal protection principles is incorrect." *People v. Villapando, supra,* 984 P.2d at 54. However, in the prior paragraph the court cited *People v. Cagle, supra,* with approval. Hence, we cannot read *Villapando* as overruling *Cagle.*

In addition to the fact that neither *District Court I* nor *Villapando* was decided on equal protection grounds, the factual predicate for the equal protection arguments in both of these cases—no evidence of possession beyond the evidence of use—is not before us. *See People v. McKenzie,* 169 Colo. 521, 528, 458 P.2d 232, 235 (1969)(rejecting equal protection argument where record included evidence of possession), *overruled in part on other grounds by People v. Lowe,* 660 P.2d 1261 (Colo.1983). Here, in contrast, defendant specifically acknowledged at the providency hearing that his "physical possession" of drugs was "separate from mixing it up and putting it in a syringe and injecting it in [his] leg and separate from offering it to [his] friends."

This factual difference defeats defendant's equal protection argument. Here, because the drugs possessed were not the drugs used, the two offenses are distinct. They would not be distinct only where all of the drugs possessed were used, in which event the evidence of use would not support a prosecution for possession. *Cf. Patton v. People,* 35 P.3d 124 (Colo.2001)(because possession and manufacture of a controlled substance are distinct offenses, criminal liability for both does not offend double jeopardy protections, unless they are based on the same incident). We interpret *Villapando* as recognizing that the particular facts, not rigid application of the strict elements test, should have defined the equal protection analysis in *District Court I.*

 Defendant next argues that, because those charged with using a controlled substance can obtain treatment and the suspension of criminal proceedings without consent of the district attorney, while those charged with possession require such consent for the same benefits, the statutory scheme violates equal protection. We disagree.

Even if a defendant is found guilty of use of a controlled substance, treatment and suspension of proceedings are not automatic. Rather, that determination rests in the court's discretion. *See People v. Drake,* 983 P.2d 135 (Colo.App.1999). Thus, no violation of equal protection exists on that basis.

We reject defendant's argument that treatment and suspension of the criminal proceedings should not depend on whether drugs were discovered in the person's bloodstream or in his or her pocket. As stated in *People v. Cagle, supra,* this distinction is precisely the point. Those who possess controlled substances can distribute them to others; those who use controlled substances cannot.

■ Finally, defendant attacks *Cagle's* recognition of societal dangers inherent in possession by contending that before relying on this rationale, the People should be required to charge and prove possession with intent to distribute. However, prosecutorial discretion to charge one or both of two distinct offenses has been held constitutional. *People v. Haymaker,* 716 P.2d 110 (Colo. 1986).

In sum, because the cocaine defendant used and the cocaine he possessed were different, the record does not support his assertion that he should have been charged only with use, and not also with possession. Accordingly, we reject his argument that the statutory scheme violates equal protection.

## II.

■ Defendant also contends that his plea was not knowingly and voluntarily entered because at the providency hearing, the court did not explain the meaning of the terms "knowingly" and "possession" and thus did not adequately advise him regarding the elements of the offense. We disagree.

■ To satisfy the requirements of due process, the record as a whole must show that the defendant understood the critical elements of the crime to which he or she pleaded guilty and that the plea was knowing and voluntary. *Lacy v. People,* 775 P.2d 1 (Colo.1989); *Waits v. People,* 724 P.2d 1329 (Colo.1986).

■ Before accepting a guilty plea, a trial court must explain the critical elements of the offense "in terms which are understandable to the defendant." *People v. District Court,* 868 P.2d 400, 403 (Colo.1994).

■ The degree of explanation required depends on a number of factors, including the nature and complexity of the offense, the defendant's personal characteristics (such as intelligence), and the defendant's representation by counsel. When the crime is relatively simple and the elements are not "so technical in nature as to be beyond the understanding of persons of normal intelligence," the reading of the information is an acceptable method of advising a defendant of the nature of the offense. *People v. Drake,* 785 P.2d 1257, 1269 (Colo.1990)(internal quotations omitted)(implicitly concluding that the term "knowingly" is readily understandable to persons of normal intelligence); *see also Lacy v. People, supra.*

Here, although the providency court did not read the information to defendant, it reminded him of the factual basis for the charges during the following colloquy:

THE COURT: [According to the police officers, they] had a discussion with you and at some point in that discussion you stated that you and your friend were using cocaine by injection.

There was other evidence presented [at a previous hearing] from the police officers who had interviewed the other three people who were there that night. They stated that the cocaine was yours and that you had bought the cocaine and that you had used it and offered other people the opportunity to use it.

Now, the important part of that hearing for purposes of this hearing [is] that there was testimony that you were in possession of, meaning actual physical control of, cocaine on that evening. And so what I need to hear from you is whether you agree ... that you had actual physical control over some cocaine of some amount and that you knew that you had it. Do you agree that occurred?

THE DEFENDANT: Just a moment, Your Honor.

(Defendant conferred with counsel.)

DEFENSE COUNSEL: If I can have just a moment, Judge.

THE COURT: Okay. Are you all ready?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So ... what is the answer to my question? My question was do you agree that on [the day of the offense] ...

THE DEFENDANT: Yes.

THE COURT: ... that at a time when you knew what you were doing, you were in actual physical possession of some amount of cocaine?

THE DEFENDANT: Yes.

THE COURT: And that's separate from mixing it up and putting it in a syringe and injecting it in your leg and separate from offering it to your friends. None of that is before the Court at the moment. I am just asking you whether you were in physical possession of some amount of cocaine on that evening.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Now, that—it's a very simple charge, and that's what it means. On [the date of the incident] at a time when you knew what you were doing and understood what was going on around you, you were in possession of a Schedule II Controlled Substance; that is, cocaine.

The court also explained the constitutional challenges to the statutes that defendant made in his motions, and defendant indicated that he understood.

The court then invited defendant to consult with his attorney before proceeding, but defendant indicated that there was no need to do so and assured the court that his attorneys had been "very thorough [in] briefing [him] as to what [he was] doing." The court determined that defendant had attended college, and when asked whether he had "any trouble understanding anything" the providency court told him, defendant responded that he had not.

Based on this record, we reject defendant's claim that the trial court's advisement was inadequate and that he did not understand the meaning of the terms "knowingly" and "possession," or that he was confused about the difference between simple possession and possession with intent to distribute. *See People v. Stephens,* 837 P.2d 231 (Colo.App.1992)(defendant was adequately apprised of the nature of the charge where the prosecution read information in court,

defendant's attorney had discussed the matter with the defendant, and the defendant acknowledged that he understood the charge).

■ Contrary to defendant's contention, the fact that he conferred with counsel following the court's advisement regarding the elements of the offense, but before he told the court he understood the advisement, does not require that we reach a different result. Defendant did not suggest to the court that counsel had contradicted the court's advisement and did not request clarification from the court regarding either the "knowingly" or "possession" elements of the offense or regarding the difference between simple possession and possession with intent to distribute. The court's advisement was clear, and defendant cannot now claim that he was unaware of that element and would not have pleaded guilty if he had been. *Cf. Craig v. People,* 986 P.2d 951 (Colo.1999)(noting that defendant confirmed at the providency hearing that he understood the written plea documents and did not express confusion or request clarification from the court regarding the claimed differences between the written and oral plea advisements).

■ Moreover, to the extent defendant claims insufficiency of evidence that he possessed cocaine other than the cocaine he used, and that he thus had a defense to the possession charge, he waived that claim when he entered his guilty plea. *See People v. Sandreschi,* 849 P.2d 873 (Colo.App.1992).

### III.

We likewise reject defendant's contentions that no aggravating evidence supported the imposition of an aggravated range sentence and that his sentence is disproportionate both to his crime and to the disposition of his codefendants' cases.

### A.

■ Sentencing is by its very nature a discretionary function. Because the trial court has greater familiarity with a defendant and the circumstances of the case, the trial court is accorded wide latitude in its

decisions on such matters. *People v. Fuller,* 791 P.2d 702 (Colo.1990). A trial court's sentencing decision will not be disturbed absent a clear abuse of discretion. *People v. Watkins,* 684 P.2d 234 (Colo.1984).

In exercising its sentencing discretion, a trial court must consider the nature and elements of the offense, the character and rehabilitative potential of the offender, any aggravating or mitigating circumstances, and the public interest in safety and deterrence. Section 16–11–101(2)(a), C.R.S.2001; *People v. Piro,* 701 P.2d 878 (Colo.App.1985).

The court may not place undue emphasis on any one of these factors to the exclusion of the others. *People v. Piro, supra.* The fact that a sentencing court finds aggravating factors to be more compelling than any arguably mitigating factors, however, does not constitute an abuse of discretion or indicate that the court failed to consider evidence of mitigation. *People v. Hernandez–Luis,* 879 P.2d 429 (Colo.App.1994).

We reject defendant's argument that the sentence imposed constitutes an abuse of discretion because the trial court overemphasized aggravating factors and did not give sufficient consideration to arguably mitigating factors, particularly his claimed rehabilitative potential. The record reflects that the trial court considered defendant's evidence of mitigation, including his long-standing addiction to drugs, his bipolar disorder, and the statements made by both his father and his attorney at the sentencing hearing indicating that they had found a private, in-patient rehabilitation facility for defendant.

The court also considered defendant's extensive criminal history, his several prior convictions for drug-related offenses, and the charges in his previous cases involving violent crimes. The court also noted defendant's failure to overcome his addiction, despite having been convicted of drug crimes before and witnessing the deaths of both his wife and his girlfriend as a result of drug overdoses. The court found that a lengthy sentence was appropriate based on these aggravating factors and that none of the arguably mitigating evidence justified a more lenient sentence.

We also reject defendant's contention that the trial court should not have considered evidence regarding the overdose deaths of his wife and his girlfriend. A trial court may consider unusual aspects of a defendant's character, past conduct, and habits and other factors consistent with a pattern of conduct that may suggest a danger to society. *People v. Phillips,* 652 P.2d 575 (Colo. 1982).

In its findings, the court noted that defendant was with both women when they used the drugs that killed them, did not seek help for one of them after it was apparent that she had overdosed, and failed to seek treatment for his own addiction after witnessing two drug-related deaths. Thus, the court considered the evidence not because it demonstrated that defendant was somehow responsible for the deaths, but because the deaths highlighted his failure to take his addiction seriously. This analysis suggests that, despite the availability of an in-patient treatment program, defendant was unlikely to respond to yet another opportunity for treatment.

Under these circumstances, the trial court's consideration of the challenged evidence was within its discretion. The court did not, as defendant suggests, blame him for the deaths. And, because the record shows no connection between the court's sentencing decision and defendant's gender, we reject his claim that the court's consideration of the evidence was "an extraordinary sexist act."

Moreover, even if the court's consideration of the drug overdose deaths was questionable, reversal is not warranted because other evidence in the record supports the sentence imposed. *See People v. Broga,* 750 P.2d 59 (Colo.1988)(where sentencing court finds several factors justifying a sentence, only one of those factors need be legitimate to support court's decision). We conclude the record shows that the trial court would have imposed the same sentence, even if it had not considered the challenged factor. *See People v. Young,* 987 P.2d 889 (Colo.App. 1999).

 Finally, the record does not support defendant's assertion that, by imposing an aggravated range sentence, the trial court punished him on the basis of his status as a drug addict.

Based on our review of the record, we find no abuse of discretion in the sentence imposed. It is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case. *See People v. Fuller, supra.* And, because there is ample support in the record for the sentencing court's decision, we will not disturb it on review. *See Rocha v. People,* 713 P.2d 350 (Colo.1986); *People v. Warren,* 200 Colo. 110, 612 P.2d 1124 (1980).

### B.

 We also reject defendant's proportionality challenge to his sentence.

 The constitutional prohibition against cruel and unusual punishment does not require strict proportionality between the crimes committed and the sentence imposed. Instead, it forbids only extreme sentences that are "grossly disproportionate" to the crime. *People v. Mershon,* 874 P.2d 1025, 1030 (Colo.1994). Thus, the threshold proportionality review measures the relationship between the nature and number of offenses committed and the severity of the sentence imposed.

 Under the narrow proportionality review applicable where, as here, the offense is serious, a reviewing court need not compare the defendant's sentence with sentences imposed on other criminals in the same jurisdiction or with the sentences imposed for the commission of the same crime in other jurisdictions, unless the threshold analysis of the crime committed and the sentence imposed "leads to an inference of gross disproportionality." *People v. Hayes,* 923 P.2d 221, 229 (Colo.App.1995); *see People v. Merchant,* 983 P.2d 108 (Colo.App.1999).

Despite recognition of the aggravating factors discussed above, including past violent offenses, the trial court did not sentence defendant to the maximum allowable term under the sentencing statutes. *See* § 18–1–105(1)(a)(V)(A), C.R.S.2001 (presumptive range of sentences for class four felonies is two to six years); § 18–1–105(6), C.R.S.2001 (aggravated range of sentences for class four felonies is seven to twelve years). Making a threshold comparison, we conclude that defendant's sentence is not disproportionate to the severity of his crime.

 Although this conclusion obviates the need for further inquiry, we also reject defendant's contention that his sentence was impermissibly disproportionate to the dispositions received by his codefendants. Sentencing is individualized; no rule requires that codefendants must receive similar sentences. *People v. Hayes, supra.* Here, defendant provided cocaine to his companions. They merely used it.

The judgment and sentence are affirmed.

Judge PLANK and Judge JONES concur.